1  Cliff Palefsky, Esq. (State Bar No. 77683)
2  Keith Ehrman, Esq. (State Bar No. 106985)
   McGUINN, HILLSMAN & PALEFSKY
3  535 Pacific Avenue
   San Francisco, CA 94133
4  Telephone: (415) 421-9292

5  Attorneys for Plaintiff
6  JAMES OLSON

FILED
07 JUN -8 PM 3:04

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES OLSON,

    Plaintiff,

v.

TANDBERG TELEVISION, INC., a corporation, and
TELEFONAKTIEBOLAGET LM ERICSSON, a corporation,

    Defendants.

Case No.   C07-02480 EDL
e-filing case

FIRST AMENDED
COMPLAINT FOR BREACH OF
CONTRACT, BREACH OF THE
COVENANT OF GOOD FAITH
AND FAIR DEALING, CALIFORNIA
LABOR CODE VIOLATIONS, AND
TORTIOUS INTERFERENCE WITH
CONTRACT

**JURY TRIAL DEMANDED**

Plaintiff alleges as follows:

**JURISDICTION AND VENUE**

1.   This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1332(a)(1), in that diversity of citizenship exists between Plaintiff JAMES OLSON ("Olson" or "Plaintiff") and Defendants TANDBERG TELEVISION, INC. ("Tandberg") and

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

First Amended Complaint                                                                 1

1   TELEFONAKTIEBOLAGET LM ERICSSON ("Ericsson").  At all relevant times, Plaintiff
2   Olson has been a resident of the state of California.  At all relevant times, Defendant
3   Tandberg has been a corporation incorporated under the laws of the state of Delaware,
4   with its principal place of business in the state of Georgia.  At all relevant times, Ericsson
5   has had its principal place of business in Sweden.  Plaintiff is informed and believes that
6   both Tandberg and Ericsson are doing business in California.
7        2.     Venue is proper in the Northern District of California, in that Plaintiff was
8   employed in Sunnyvale, California, and the major operative events in this action–the
9   termination of Plaintiff's employment and the breach of Plaintiff's contract–occurred within
10  the Northern District of California.

**GENERAL ALLEGATIONS**

3.   Plaintiff is informed and believes and thereon alleges that each of the defendants named herein is responsible in some manner for the events and happenings herein referred to, and that plaintiff's injuries and damages as hereinafter set forth were proximately caused by said defendants.

4.   Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the defendants sued herein was the agent and/or partner and/or joint venturer of each of the remaining defendants, and each of them was at all times acting within the purpose and scope of such agency.

5.   In June 1997, Plaintiff Olson was being recruited by SKYSTREAM CORPORATION ("SkyStream") to become SkyStream's President and CEO. SkyStream was headquartered in Mountain View, California. In June 1997, Olson and SkyStream entered into an employment agreement ("the 1997 SkyStream Employment Agreement"), pursuant to which Olson agreed to accept employment as SkyStream's President and

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

First Amended Complaint

2

1  CEO.

2  6.  The terms of the 1997 SkyStream Employment Agreement were partly written, partly oral and partly implied. Many of the terms of the 1997 SkyStream Employment Agreement were contained in an offer letter from SkyStream to Olson dated June 12, 1997. Pursuant to the terms of the 1997 SkyStream Employment Agreement, if Plaintiff's employment was terminated without "cause", Plaintiff was entitled to receive all compensation due to him as of the date of his termination (including bonuses); severance payments equal to six months of his then current base salary; continued vesting of any stock options for six months beyond his termination date; and payment of six months of continued health and medical benefits and other benefits on the same basis as if he were an employee.

7.  Plaintiff commenced employment with SkyStream in July 1997. Plaintiff continued to work as SkyStream's President and CEO until March 2006. In March 2006, Defendant Tandberg acquired SkyStream. In connection with the transaction, and as set forth in the Merger Agreement between SkyStream and Tandberg, Tandberg assumed and became responsible for various contractual obligations and liabilities of SkyStream, including specifically assuming obligations contained in Olson's 1997 SkyStream Employment Agreement. Upon the closing of the transaction with Tandberg, Plaintiff became the Executive Vice President of Compression Systems for Tandberg, and Plaintiff entered into an additional employment contract with Tandberg ("the Tandberg Employment Contract"). The terms of Plaintiff's Tandberg Employment Contract were partly written, partly oral and partly implied. In his position as Executive Vice President, Plaintiff reported to ERIC COONEY ("Cooney"), the CEO of Tandberg.

First Amended Complaint                                3

8.   Pursuant to the terms of Plaintiff's Tandberg Employment Contract, the terms of Plaintiff's 1997 SkyStream Employment Agreement were adopted and incorporated into Plaintiff's Tandberg Employment Contract. Indeed, under the specific terms of the Merger Agreement, Tandberg assumed obligations set forth in Plaintiff's 1997 SkyStream Employment Agreement. Among the terms which were adopted into, and became part of, Plaintiff's Tandberg Employment Contract were the terms which provided that if Plaintiff's employment was terminated without "cause", Plaintiff was entitled to receive all compensation due to him as of the date of his termination (including bonuses); severance payments equal to six months of his then current base salary; continued vesting of any stock options for six months beyond his termination date; and payment of six months of continued health and medical benefits and other benefits on the same basis as if he were an employee.

9.   At the time of the merger between Tandberg and SkyStream, Tandberg had a Stock Incentive Plan ("SIP"), pursuant to which Tandberg granted shares of restricted stock to certain employees. Tandberg also referred to its SIP at various times as a "long term incentive plan" ("LTIP"). In connection with Plaintiff's employment with Tandberg, Plaintiff and Tandberg entered into a contract pursuant to which Plaintiff became a participant in Tandberg's SIP ("the Restricted Stock Contract"). The terms of Plaintiff's Restricted Stock Contract were partly written, partly oral and partly implied. Tandberg and Plaintiff entered into the Restricted Stock Contract on approximately March 30, 2006. Under the terms of the Restricted Stock Contract, on March 30, 2006, Tandberg granted Plaintiff 82,027 shares of Tandberg stock. One third of these shares (27,342 shares) vested on January 31, 2007; one third of the shares vested on January 31, 2008; and one third of the shares

First Amended Complaint                                                                 4

vested on January 31, 2009. Pursuant to the terms of Plaintiff's Restricted Stock Contract, if there was a "change of control" at Tandberg (such as an acquisition of Tandberg by another company), all of Plaintiff's unvested shares immediately accelerated and became vested, provided that Plaintiff was still providing services to Tandberg at the time of the change of control. The terms of Plaintiff's Restricted Stock Contract became part of, and were incorporated into, Plaintiff's Tandberg Employment Contract.

10. While employed at SkyStream, Plaintiff had been eligible for an annual bonus. For 2005, Plaintiff had received an annual bonus from SkyStream of $ 49,500, which was paid in the first quarter of 2006. Pursuant to the terms of Plaintiff's Tandberg Employment Contract, in addition to his base salary, Plaintiff was entitled to an annual bonus consistent with the bonus plan available to other Tandberg executives at Plaintiff's level. Pursuant to the terms of Plaintiff's Tandberg Employment Contract, Plaintiff was eligible to receive a bonus for 2006 of up to 20% of his base salary, and the size of his bonus would be based on Plaintiff's job performance and the performance of his business unit. Tandberg paid its annual bonuses in the first quarter of the following year. Indeed, in the first quarter of 2007, Tandberg paid bonuses to Plaintiff's three direct reports, in recognition of their 2006 performance. Plaintiff was also eligible to receive a bonus for 2007.

11. During 2006, Plaintiff's base salary at Tandberg was $247,500. On January 23, 2007, Plaintiff received a performance-based salary increase, effective January 1, 2007. Plaintiff's salary as of January 1, 2007 became $252,450. On January 23, 2007, Plaintiff was also notified that he would be eligible again during 2007 for an annual bonus of up to 20% of his base salary. On January 31, 2007, the first one-third of Plaintiff's stock

First Amended Complaint     5

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

1 vested pursuant to the Restricted Stock Contract.

2   12.   Between December 2006 and March 2007, Tandberg was involved in negotiations and due diligence review with several companies which were interested in possibly acquiring Tandberg. In early February 2007, Tandberg announced its earnings for its 2006 fiscal year. In late February 2007, Defendant Ericsson announced its intention to acquire Tandberg. By March 21, 2007, Ericsson had made an offer to acquire Tandberg, and Tandberg executives believed that this offer would be accepted. On March 21, 2007, Ericsson announced its pending acquisition of Tandberg. Tandberg and Ericsson expected the acquisition to formally close in approximately one month, i.e., during the last week of April 2007.

13.   Pursuant to Plaintiff's Restricted Stock Contract, upon the closing of the acquisition of Tandberg by Ericsson, the unvested shares of Plaintiff's stock would immediately accelerate and vest. The unvested portion of Plaintiff's stock was worth more than $900,000. On March 21 and March 22, 2007, Cooney informed Plaintiff that he intended to terminate Plaintiff prior to the closing of the Ericsson merger in order to prevent Plaintiff from vesting in his unvested shares. Cooney and Plaintiff discussed the fact that Plaintiff was legally entitled to vest in all of his unvested stock if he were employed on the date of the merger closing. Cooney informed Plaintiff that he had discussed Plaintiff's accelerated stock vesting with Ericsson, and that Plaintiff's stock vesting was a big concern to Ericsson. Cooney also indicated to Plaintiff that if he terminated Plaintiff at some point after the merger, he did not want to have to explain to Ericsson that Plaintiff had already received $900,000 from his accelerated stock vesting.

14.   On March 22, 2007, Tandberg terminated Plaintiff, effective immediately.

First Amended Complaint                                                                                                  6

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

1   Tandberg terminated Plaintiff when it did, just prior to the merger, for the specific purpose
2   of preventing Plaintiff from receiving his unvested stock, which would have accelerated and
3   vested upon the closing of the merger between Tandberg and Ericsson in April 2007.
4   Indeed, after Cooney admitted that the reason he terminated Plaintiff when he did, he
5   suggested that Plaintiff obtain a letter from a lawyer detailing why the termination was
6   inappropriate and why he was still entitled to his accelerated vesting. Cooney indicated
7   that he wanted to give the letter to Ericsson and discuss with them paying Plaintiff some or
8   all of the money he was owed as a result of the impending merger.

15.   Pursuant to the terms of Plaintiff's Tandberg Employment Contract, upon his termination by Tandberg, Plaintiff was entitled to all compensation due to him as of the date of his termination (including bonuses); continued severance payments equal to his base salary for the next 6 months ($126,225); 6 months of continued payment for health and insurance premiums and other benefits on the same basis as if he were an employee; and six months of additional stock vesting. Defendants demanded that Plaintiff sign a release of all claims as a condition of receiving his severance payments, despite the fact that such payments were due and owing to Plaintiff without any such release. Defendants also denied that Plaintiff was due any additional stock vesting, and initially refused to pay for Plaintiff's health and insurance premiums and other benefits. When Plaintiff refused to sign a release in order to obtain his severance and health coverage, Defendants thereafter failed and refused to provide Plaintiff with the full severance and other benefits due to him under his Tandberg Employment Contract.

16.   In March 2007, Tandberg awarded its annual bonuses for 2006 to its employees, including awarding bonuses to Plaintiff's three direct reports. Because

Plaintiff's bonus "target" was up to 20% of his 2006 base salary, Plaintiff expected to receive a bonus of up to $50,000. Instead, in a bad faith effort to pressure Plaintiff into giving up his claims for severance and stock, Tandberg informed Plaintiff that it was awarding Plaintiff no bonus compensation whatsoever for 2006.

### FIRST CAUSE OF ACTION
### (Breach of Contract Against Tandberg)

17. Plaintiff incorporates by reference as though fully set forth every allegation of ¶¶ 1 through 16 above.

18. Plaintiff's Tandberg Employment Contract, and his Restricted Stock Contract, contained a covenant of good faith and fair dealing, pursuant to which the parties agreed to deal fairly and in good faith with each other. Pursuant to this covenant of good faith, neither party may engage in conduct for the purpose of depriving the other party of the benefits of the contract.

19. As set forth above, under Plaintiff's Tandberg Employment Contract and his Restricted Stock Contract, upon a change of control of Tandberg, all of Plaintiff's unvested stock immediately accelerated and became vested. The covenant of good faith and fair dealing obligated Defendants to deal fairly and in good faith with Plaintiff, and prohibited Defendants from engaging in conduct for the purpose of depriving Plaintiff of the benefits of the Tandberg Employment Contract and the Restricted Stock Contract. In terminating Plaintiff immediately before the closing of Ericsson's acquisition of Tandberg, for the specific purpose of depriving Plaintiff of the stock which had been previously granted to him as part of his employment compensation, and in terminating Plaintiff for the specific purpose of depriving him of the benefits of his Tandberg Employment Contract and/or the Restricted Stock Contract, Defendants acted in bad faith and breached the covenant of

First Amended Complaint                                                                                     8

McGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

good faith and fair dealing contained in Plaintiff's Tandberg Employment Contract and Plaintiff's Restricted Stock Contract. In breaching the covenant of good faith and fair dealing, Defendants breached Plaintiff's Tandberg Employment Contract and Plaintiff's Restricted Stock Contract.

20. Plaintiff has performed all of the covenants, conditions and obligations that were his to perform under his Tandberg Employment Contract and his Restricted Stock Contract, except those which have been excused or made impossible by Defendants.

21. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in a sum in excess of the jurisdictional limits of this Court.

WHEREFORE, Plaintiff prays for judgment as is further set forth below.

## SECOND CAUSE OF ACTION
### (Breach of Contract against Tandberg)

22. Plaintiff re-alleges and incorporates by reference ¶¶ 1 through 21, above, as though fully set forth herein.

23. Pursuant to the terms of his Tandberg Employment Contract, following his termination on March 22, 2007, Plaintiff was entitled to all compensation due to him as of the date of his termination (including bonuses); six months of severance pay; six months of continued health and insurance payments and other benefits as if he were an employee; and six months of continued stock vesting. As set forth above, following Plaintiff's termination, Defendants failed and refused to pay Plaintiff all of the bonus compensation, severance pay and health/insurance payments due to him. Defendants also denied that Plaintiff was entitled to six months of continued stock vesting. In doing these acts and omissions, Defendants breached Plaintiff's Tandberg Employment Contract.

24. Plaintiff has performed all of the covenants, conditions and obligations that

McGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

were his to perform under his Tandberg Employment Contract, except those which have been excused or made impossible by Defendants.

25. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in a sum in excess of the jurisdictional limits of this Court.

WHEREFORE, Plaintiff prays for judgment as is further set forth below.

### THIRD CAUSE OF ACTION
**(Breach of Contract Against Tandberg)**

26. Plaintiff re-alleges and incorporates by reference ¶¶ 1 through 25, above, as though fully set forth herein.

27. As set forth above, pursuant to the terms of his Tandberg Employment Contract, Plaintiff was entitled to an annual bonus for 2006, payable in March 2007. Based upon Plaintiff's performance and the performance of his business unit, Plaintiff was entitled to a bonus of up to 20% of his 2006 base salary. This bonus was due and owing to Plaintiff prior to March 22, 2007. In addition, as a result of his termination, Plaintiff was also entitled to a pro-rata portion of his annual bonus for 2007.

28. Defendants failed and refused to pay Plaintiff any bonus compensation whatsoever for his 2006 performance. Defendants also failed and refused to pay Plaintiff any pro-rata bonus compensation for his 2007 performance. In doing so, Defendants breached Plaintiff's Tandberg Employment Contract. Furthermore, Plaintiff's Tandberg Employment Contract contained a covenant of good faith and fair dealing, pursuant to which the parties agreed to deal fairly and in good faith with each other. Pursuant to this covenant of good faith, neither party may engage in conduct for the purpose of depriving the other party of the benefits of the contract. To the extent that Defendants had discretion to determine the amount of Plaintiff's 2006 bonus and a pro-rata portion of his 2007

First Amended Complaint

10

McGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

bonus, the covenant of good faith and fair dealing required Defendants to exercise that discretion in good faith. In determining that they would pay Plaintiff no bonus compensation whatsoever for 2006 or 2007, Defendants exercised their discretion in bad faith and thereby breached the covenant of good faith and fair dealing. Indeed, Defendants did not truly believe that Plaintiff was not entitled to "zero" bonus compensation based on his performance in 2006 or 2007; rather, Defendants informed Plaintiff that he would receive no bonus compensation in a bad faith effort to pressure Plaintiff into giving up certain contractual rights to severance and stock. In breaching the covenant of good faith and fair dealing contained in Plaintiff's Tandberg Employment Contract with respect to the determination of Plaintiff's 2006 and 2007 bonuses, Defendants breached the Tandberg Employment Contract.

29. Plaintiff has performed all of the covenants, conditions and obligations that were his to perform under his Tandberg Employment Contract, except those which have been excused or made impossible by Defendants.

30. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in a sum in excess of the jurisdictional limits of this Court.

WHEREFORE, Plaintiff prays for judgment as is further set forth below.

### FOURTH CAUSE OF ACTION
**(Violation of Labor Code Section 201 against Tandberg)**

31. Plaintiff re-alleges and incorporates by reference ¶¶ 1 through 30, above, as though fully set forth herein.

32. As set forth above, at the time of Plaintiff's termination on March 22, 2007, and subsequent to his termination, Defendants owed Plaintiff bonus compensation for 2006, severance pay, and health/insurance payments. Defendants failed and refused to

First Amended Complaint                                                                                           11

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

pay Plaintiff the full compensation he was due at the time of his termination, and thereafter failed to pay Plaintiff the full compensation he was due subsequent to his termination.

33. Under Labor Code Section 201, Defendants were required to pay Plaintiff all compensation that was due and owing to him in a timely manner following his termination. In failing to pay Plaintiff all such compensation, Defendants violated Labor Code Section 201.

34. Pursuant to Labor Code Section 203, Plaintiff is entitled to a statutory waiting time penalty equal to 30 days wages. At the time of termination, Plaintiff's daily wage rate was $1,161.34 per day (based on annual compensation of $301,950, i.e., $252,450 in salary plus $49,500 in bonus compensation). Thus, Plaintiff is entitled to a statutory waiting time penalty of $ 34,840.

WHEREFORE, Plaintiff prays for judgment as is further set forth below.

### FIFTH CAUSE OF ACTION
(Violation of Labor Code Sections 216 and 206.5 against Tandberg)

35. Plaintiff re-alleges and incorporates by reference ¶¶ 1 through 34, above, as though fully set forth herein.

36. As set forth above, following Plaintiff's termination on March 22, 2007, Defendants owed Plaintiff bonus pay, severance pay and health/insurance and other benefit payments pursuant to his Tandberg Employment Contract. Defendants had the ability to pay such amounts, but initially refused to pay Plaintiff the severance and health/insurance compensation unless Plaintiff first executed a release of claims.

37. Pursuant to Labor Code Section 216, an employer violates the law, and is guilty of a criminal misdemeanor, if the employer has the ability to pay compensation due to an employee but willfully refuses to pay such compensation. Pursuant to Labor Code

First Amended Complaint 12

Section 216, an employer also violates the law, and is guilty of a misdemeanor, if the employer falsely denies the amount or validity of compensation due an employee, or denies that the compensation is due to the employee, with the intent to secure for itself any discount upon such amount, or with the intent to annoy, harass, oppress, hinder, delay or defraud the employee.

38. Pursuant to Labor Code Section 206.5, an employer may not require the execution of a release of any claim or right as a condition of paying an employee wages that are due or are coming due. Pursuant to Labor Code Section 206.5, such conduct by an employer constitutes a criminal misdemeanor.

39. Following Plaintiff's termination, Defendants owed Plaintiff certain bonus, severance and health/insurance payments pursuant to his Tandberg Employment Contract. Defendants had the ability to pay such compensation to Plaintiff, but Defendants initially willfully refused to do so after Plaintiff demanded payment. Defendants also initially refused to pay Plaintiff the severance and other payments due to him unless Plaintiff executed a release of all claims. In addition, Defendants initially falsely contended that such wages were owed only upon Plaintiff signing a release, with the intent to annoy, harass, oppress, hinder, delay or defraud Plaintiff. In doing these acts, Defendants violated Labor Code Sections 216 and 206.5, and committed a criminal misdemeanor.

40. As a result of Defendants' conduct, Plaintiff has suffered damages, including a loss of income and benefits, and has suffered emotional distress, all in an amount in excess of the jurisdictional limits of this Court.

41. In doing the things alleged herein, Defendants' conduct was despicable, and Defendants acted toward Plaintiff with malice, oppression, fraud and with a willful and

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

First Amended Complaint

13

conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment as is further set forth below.

### SIXTH CAUSE OF ACTION
### (Tortious Interference with Contract Against Eriscsson)

42.  Plaintiff re-alleges and incorporates by reference ¶¶ 1 through 41, above, as though fully set forth herein.

43.  In March 2007, Defendant Ericsson was negotiating with Defendant Tandberg for the acquisition of Tandberg. In March 2007, Ericsson was aware that Plaintiff had an employment contract with Tandberg and a contract which would entitle Plaintiff to immediate acceleration and full vesting of his unvested shares of Tandberg stock upon the merger closing, if Plaintiff was still employed by Tandberg at the time of the merger closing. Ericsson was also aware that Plaintiff's accelerated shares would be worth over $900,000 at the time of the merger closing.

44.  Plaintiff is informed and believes that, in an effort to avoid payment to Plaintiff of over $900,000 worth of stock upon the merger closing, Ericsson encouraged Tandberg to terminate Plaintiff's employment prior to the merger's anticipated closing date in April 2007. Plaintiff is informed and believes that, partly due to the encouragement of Ericsson, Tandberg terminated Plaintiff's employment on March 22, 2007, in order to prevent Plaintiff from receiving additional shares of Tandberg stock upon the April 2007 merger closing.

45.  In doing the acts and omissions set forth above, Ericsson intentionally, willfully, wrongfully and tortiously interfered with Plaintiff's Tandberg Employment Contract and with Plaintiff's Restricted Stock Contract.

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

46. As a result of Defendants' conduct, Plaintiff has suffered damages, including a loss of income and benefits, and has suffered emotional distress, all in an amount in excess of the jurisdictional limits of this Court.

47. In doing the things alleged herein, Defendants' conduct was despicable, and Defendants acted toward Plaintiff with malice, oppression, fraud and with a willful and conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment as is further set forth below.

## **PRAYER FOR RELIEF**

1. For general damages according to proof;
2. For special damages according to proof;
3. For punitive damages;
4. For costs of suit, including reasonable attorneys fees;
5. For interest at the maximum legal rate on all sums awarded; and
6. For such other relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

DATED: June 8, 2007

McGUINN, HILLSMAN & PALEFSKY
Attorneys for Plaintiff

By: _____
Cliff Palefsky

First Amended Complaint                                            15

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

PROOF OF SERVICE

CASE NAME: *Olson v. Tandberg Television, Inc. and* Telefonaktiebolaget LM Ericsson
CASE NO.: C07-02480 EDL
COURT: U.S. District Court - Northern District of California

I am employed in the City and County of San Francisco, California; I am over the age of eighteen years and not a party to the within action; my business address is 535 Pacific Avenue, San Francisco, California 94133. On the date last written below, I served the following documents:

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, CALIFORNIA LABOR CODE VIOLATIONS, AND TORTIOUS INTERFERENCE WITH CONTRACT**

on the parties, through their attorneys of record, by placing true copies thereof in sealed envelopes addressed as shown below for service as designated below:

(A)     By First Class Mail - I caused each such envelope, with first-class postage thereon fully prepaid, to be deposited in a recognized place of deposit of the U. S. mail in San Francisco, California, for collection and mailing to the office of the addressee on the date shown herein following ordinary business practices.

(B)     By Personal Service - I caused each such envelope to be delivered to a courier employed by Special T Delivery Service, with whom we have a direct billing account, who personally delivered each such envelope to the office of the addressee.

(C)     By Federal Express - I caused each such envelope to be delivered to the Federal Express Corporation at San Francisco, California, with whom we have a direct billing account, to be delivered to the office of the addressee on the next business day.

(D)     By Facsimile - I caused a copy of this document to be faxed to the parties noted at the fax numbers stated below. Attached hereto is a verification of reception.

| Type of Service | Addressee | Party |
| --- | --- | --- |
| A | Stephen Hirschfeld<br>Geoffrey Hash<br>CURIALE DELLAVERSON<br>HIRSCHFELD & KRAIMER LLP<br>727 Sansome Street<br>San Francisco, CA 94111 | Defendant<br>Tandberg Television |

First Amended Complaint                                                                                                         16

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

1

2   I declare under penalty of perjury that the foregoing is true and correct.
3   Executed this 8th day of June 2007 at San Francisco, California.

4

5                                                    _____
                                                     Lorraine Hemenway

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

First Amended Complaint                                                    17