Cliff Palefsky, Esq. (State Bar No. 77683)
Keith Ehrman, Esq. (State Bar No. 106985)
McGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 421-9292

Attorneys for Plaintiff
JAMES OLSON

Stephen J. Hirschfeld (SBN118068)
Geoffrey M. Hash (SBN 227223)
CURIALE DELLAVERSON
  HIRSCHFELD & KRAEMER, LLP
727 Sansome Street
San Francisco, CA 94111
Telephone: (415) 835-9000
Facsimile: (415) 834-0443
E-mail: shirschfeld@cdhklaw.com
        ghash@cdhklaw.com

Attorneys for Defendants
TANDBERG TELEVISION, INC. and
TELEFONAKTIEBOLAGET LM ERICSSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Francisco Division)

| | |
|---|---|
| JAMES OLSON,<br><br>Plaintiff,<br><br>vs.<br><br>TANDBERG TELEVISION, INC., a corporation, and TELEFONAKTIEBOLAGET LM ERICSSON, a corporation.<br><br>Defendants. | Case No. C07-02480 PJH<br><br>E-FILING CASE<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>**Date:** August 16, 2007<br>**Time:** 2:30 p.m.<br>**Courtroom:** 3, 17th Floor<br><br>**Hon. Phyllis J. Hamilton** |

Plaintiff JAMES OLSON ("Olson") and Defendant TANDBERG TELEVISION, INC. ("Tandberg") submit this Joint Case Management Conference Statement.

**INTRODUCTORY COMMENT**

This action was filed on May 9, 2007. Plaintiff thereafter filed a First Amended Complaint on June 8, 2007. Defendant Tandberg filed its Answer on June 29, 2007.

The second Defendant in this action, TELEFONAKTIEBOLAGET LM ERICSSON ("LME Ericson"), is a Swedish corporation with its principal place of business in Sweden. Ericsson has no agent for service registered in California. Therefore, Plaintiff has had to undertake serving the First Amended Complaint on Ericsson in Sweden, a process which involves

following certain international treaty guidelines and often takes up to several months to complete. Counsel for Tandberg, which recently became counsel for LME Ericsson as well, has recently learned that service was in fact completed on or about July 19, 2007 and informed Plaintiff's counsel of the same on August 9, 2007. Because it was just recently served and, as of the drafting of this joint statement, LME Ericsson has not yet formally appeared in this action, LME Ericsson has not been consulted regarding this Joint Case Management Statement ("Joint Statement"). Thus, as stated above, this Joint Statement is submitted only on behalf of Plaintiff Olson and Defendant Tandberg.

The action was originally assigned to Magistrate Judge Elizabeth Laporte. An initial Case Management Conference date of August 14, 2007 was set by Magistrate Laporte. The parties were therefore scheduled to complete their Rule 26 Initial Disclosures on August 7, 2007, i.e, 7 days before the CMC. The parties were also scheduled to file a joint ADR Certification by July 24, 2007.

However, on July 2, 2007, the parties were notified that Magistrate Judge Laporte would no longer be assigned to the case, given the filing of a Declination to Proceed Before a Magistrate Judge. The August 14, 2007 CMC was therefore taken off calendar by the Court. Because the Plaintiff and Tandberg were awaiting assignment of a new Judge and a new Case Management Conference date, and because Defendant LME Ericsson had not yet appeared in the case, the parties deferred filing a joint ADR stipulation, and agreed to push back their Initial Disclosures to August 30, 2007. The parties also set tentative depositions of the two primary witnesses in the case for October 2007.

On August 1, 2007, the parties were notified that the Honorable Phyllis J. Hamilton had been assigned to this action. The parties also received the Court's Order setting the CMC for August 16, 2007; setting the filing of a Joint Case Management Conference for August 9, 2007; and a Notice of Non-Compliance with Court Order regarding the failure to file an ADR Stipulation.

### 1. Jurisdiction and Venue

This is an employment case. The Court has jurisdiction over this matter pursuant to 28

U.S.C. Section 1332(a)(1), based on diversity. Plaintiff is a resident of California and was employed in the Northern District, i.e., Sunnyvale. His employer, Defendant Tandberg is a Delaware corporation headquartered in Georgia. Defendant Ericsson is a Swedish corporation headquartered in Sweden.

As noted above, Defendant LME Ericsson was just recently served in Sweden. Further, LME Ericsson anticipates making its first formal appearance on August 9, 2007 by filing a pleading responsive to Plaintiff's First Amended Complaint.

**2. Facts**

Plaintiff Olson served as the President and CEO of SKYSTREAM CORPORATION ("SkyStream") between July 1997 and March 2006. Olson had an employment agreement with SkyStream which provided for certain benefits upon a termination "without cause".

In March 2006, Defendant Tandberg acquired SkyStream. In connection with the merger transaction, Tandberg assumed certain specific contractual obligations and liabilities of SkyStream. Upon the merger, Plaintiff became a Tandberg employee with the title of Executive Vice President, Compression Systems. In his position as Executive Vice President, Plaintiff reported to ERIC COONEY ("Cooney"), CEO of the parent company of TANDBERG (TANDBERG Television ASA).

At the time of the merger between Tandberg and SkyStream, Tandberg had a stock incentive plan, entitled the TANDBERG TELEVISION ASA 2005 Stock Incentive Plan – Restricted Stock Unit Agreement ("RSU Agreement"), pursuant to which Tandberg granted shares of restricted stock units ("RSUs") to certain employees. In March 2006, Tandberg granted Plaintiff 82,027 Tandberg RSUs under the RSU Agreement. One third of these shares (27,342 shares) became unrestricted on January 31, 2007; one third of the shares were to become unrestricted on January 31, 2008; and one third of the shares were to become unrestricted on January 31, 2009. Pursuant to the terms of the RSU Agreement, if there was a change of control at Tandberg (such as an acquisition of Tandberg by another company), all of Plaintiff's restricted shares immediately accelerated and became unrestricted, provided that Plaintiff was still providing services to Tandberg at the time of the change of control.

Between December 2006 and March 2007, Tandberg was involved in publicly known negotiations and due diligence review with different companies that were interested in acquiring Tandberg. In late February 2007, Defendant Ericsson announced its intention to acquire Tandberg. On March 21, 2007, Ericsson publicly announced its pending acquisition of Tandberg; Tandberg and Ericsson hoped that the acquisition would formally close in approximately one month, i.e., during the last week of April 2007.

Pursuant to RSU Agreement that governed Plaintiff's RSUs, upon the closing of the acquisition of Tandberg by LME Ericsson, the restricted shares of Plaintiff's stock would immediately accelerate and become unrestricted, provided that Plaintiff was still employed by Tandberg at the time of any actual change in control. The restricted portion of Plaintiff's remaining RSUs was worth approximately $900,000. On March 21 and 22, 2007, Cooney informed Plaintiff of his intention to terminate him. On March 22, 2007, Tandberg terminated Plaintiff, effective immediately.

Plaintiff believes that the Tandberg/LME Ericsson merger closed in late April 2007. Plaintiff believed that the timing of his termination was done for the specific purpose of preventing Plaintiff from "vesting" in his restricted RSUs under the terms of the RSU Agreement.

Following Plaintiff's termination, Plaintiff and Tandberg also disputed whether certain severance payments were actually owed to Plaintiff, including a six month severance payment; a bonus for 2006; and a pro-rated bonus for 2007.

The principal factual issues in dispute are:

1) What were the terms of Plaintiff's employment agreement, if any, with SkyStream?
2) At the time Tandberg acquired SkyStream, did Tandberg assume any obligations with respect to Plaintiff under Plaintiff's SkyStream employment agreement, if any?
3) What were Tandberg's reasons for terminating Plaintiff's employment?
4) Did Tandberg terminate Plaintiff prior to the completion of the Tandberg/LME Ericsson merger for the purpose of depriving Plaintiff of accelerated vesting in his RSUs?
5) What were Tandberg's reasons for terminating Plaintiff's employment when it did

4

JOINT CMC STATEMENT
CASE NO.: C07-02480 PJH

(i.e., on or about March 21, 2007)?

6) What, if anything, did Tandberg and Ericsson discuss regarding Plaintiff's employment with Tandberg, including the termination thereof and the timing of the termination?

7) Was Plaintiff, in March 2007, contractually entitled to receive an annual bonus payment from Tandberg for his performance in 2006?

8) Was Plaintiff contractually entitled to receive a pro-rated bonus payment from Tandberg for his performance in 2007?

9) At the time of Plaintiff's termination, did Tandberg immediately pay Plaintiff all wage compensation he was due and owed?

10) At the time of Plaintiff's termination, did Tandberg reasonably believe that it had immediately paid Plaintiff all wage compensation he was due and owed?

11) Following Plaintiff's termination, did Tandberg inform Plaintiff that it would not give him any severance pay unless he first signed a release?

12) Following Plaintiff's termination, did Tandberg reasonably believe that Plaintiff was not entitled to any severance pay or other severance benefits unless Plaintiff first signed a release?

13) Did LME Ericsson encourage Tandberg to terminate Plaintiff's employment with Tandberg?

14) If LME Ericsson did encourage Tandberg to terminate Plaintiff's employment with Tandberg, why did it do so?

15) Was LME Ericsson actually aware of the existence, if any, of a contract between Plaintiff and Tandberg?

16) If LME Ericsson was actually aware of the existence, if any, of a contract between Plaintiff and Tandberg, what was LME Ericsson's understanding of the nature and/or terms of that contract?

**3. Legal Issues**

1) Was there any contract between Tandberg and Plaintiff?

2) If there was a contract between Tandberg and Plaintiff, what were the terms of any such contract?

3) If there was a contract between Tandberg and Plaintiff, was Tandberg's performance excused for any reason?

4) Did Tandberg breach the implied covenant of good faith and fair dealing when it terminated Plaintiff's employment with Tandberg in March 2007?

5) Did Tandberg breach any contractual obligations to Plaintiff when it decided not to award him any annual bonus compensation for 2006?

6) Did Tandberg breach any contractual obligations to Plaintiff when it decided not to award him any pro-rated bonus compensation for 2007?

7) Did Tandberg otherwise breach any contractual obligations to Plaintiff?

8) Did Tandberg violate California Labor Code Section 206.5 when it asked Plaintiff to sign a release before agreeing to pay him a severance?

9) Did Tandberg have a reasonable belief that Plaintiff was not entitled to any severance benefits unless he signed a release?

9) Did Tandberg violate California Labor Code Section 201, and so incur "waiting time" penalties under Labor Code Section 203, in connection with its termination of Plaintiff? If so, what is the amount of the "waiting time" penalty owed?

10) Did Tandberg violate California Labor Code Section 216 in connection with its termination of Plaintiff?

11) Did LME Ericsson tortiously interfere with the contract, if any, between Plaintiff and Tandberg?

12) Did LME Ericsson tortiously interfere with any other alleged contract between Plaintiff and Tandberg?

13) Is Plaintiff entitled to punitive damages on his tort claim?

**4. Motions**

Plaintiff does not presently anticipate bringing any motions.

Tandberg anticipates filing a motion for summary judgment, or in the alternative,

6

JOINT CMC STATEMENT
CASE NO.: C07-02480 PJH

summary adjudication of the issues.

### 5. Amendment of Pleadings

Plaintiff previously filed a First Amended Complaint to substitute the correct name for Defendant Ericsson. Plaintiff does not presently anticipate any additional amendments of pleadings.

Tandberg anticipates filing an Amended Answer to clarify and add several additional affirmative defenses in light of information recently learned.

### 6. Evidence Preservation

Plaintiff (who is an individual) has been instructed to preserve all relevant evidence.

Tandberg has been instructed, and has in turn instructed applicable Tandberg employees to preserve all discoverable evidence, regardless of form.

### 7. Disclosures

As noted above in the Introductory Comment, because of the cancellation of the initial Case Management Conference on July 2, 2007 and the transition to a new Judge being assigned, and because Defendant Ericsson was still in the process of being served overseas, the parties tentatively agreed in July to exchange initial disclosures by August 30, 2007. However, in light of the Court's setting an August 16, 2007 Case Management Conference, the parties will seek to accelerate that process. However, Plaintiff is currently out of town and unavailable to obtain the documents needed for the Initial Disclosures. The parties request that the Court allow Plaintiff and Tandberg to complete their Initial Disclosures by August 30, 2007. Given LME Ericsson's anticipated first appearance of August 9, 2007, and given the fact that LME Ericsson is in Sweden, counsel for Defendants would further request that Plaintiff and the Court provide additional time, to and including September 30, 2007, for the completion of LME Ericsson's and Plaintiff's Initial Disclosures with each other. Plaintiff is amendable to providing additional time beyond August 30 for the initial disclosures with respect to LME Ericsson, but suggests September 20, 2007 as a deadline for the same.

### 8. Discovery

No discovery has taken place to date, as the parties have been under the 90 day 'freeze"

on discovery. The parties have tentatively scheduled the depositions of the Plaintiff and the key witness for Defendant Tandberg for October 2007. The parties also intend to propound initial written discovery (document requests and interrogatories) during August and/or September 2007. The parties have been hesitant to proceed with substantial discovery in light of Defendant Ericsson not yet appearing in the case. The parties do not, at this time, anticipate exceeding the normal limits and rules on permissible discovery. Defendant Tandberg has indicated that it may wish to take Plaintiff's deposition for more than one day, which the parties are continuing to discuss.

### 9. Class Action

N/A

### 10. Related Cases

N/A

### 11. Damages

Tandberg maintains that its actions were undertaken in good faith, based upon legitimate and lawful business reasons. Accordingly, Tandberg further maintains that there are no damages for which it can be held liable with respect to Plaintiff.

Plaintiff estimates that the value of the RSUs which he was deprived of due to his "early" termination to be approximately $900,000. Plaintiff estimates that he should have received a 2006 annual bonus of approximately $50,000, i.e., 20% of Plaintiff's base salary. Plaintiff has not yet been able to estimate the appropriate amount for a pro-rated 2007 bonus. Plaintiff estimates that the "waiting time" penalty for Defendant's violation of Labor Code Section 201 (for failure to immediately pay all compensation due at the time of termination) is approximately $34,840 (based on annual compensation of $301,950, resulting in a daily wage rate of $1,161, multiplied by a 30 day penalty). Punitive damages will be left to the discretion of the jury.

### 12. Settlement and ADR

Plaintiff and Defendant had settlement discussions before this lawsuit was filed. Plaintiff is willing to go to private mediation. Counsel have discussed the possibility of an early neutral evaluation. Tandberg has not yet decided whether it is amenable to mediation. Therefore, the

JOINT CMC STATEMENT
CASE NO.: C07-02480 PJH

parties have notified the Court that they need an ADR Phone Conference with the ADR Administrator. If it is to occur, it would likely be most efficient for all parties – Plaintiff, Tandberg, and LME Ericsson – to participate in the same ADR session. However, as previously noted, LME Ericsson has just been served and is expected to make its first appearance on August 9, 2007. It has not yet been consulted regarding ADR. Accordingly, Defendant's counsel believes that it may yet be premature to hold the ADR Phone Conference, as additional time may eliminate the need for such a conference.

### 13. Magistrate Judge

This case was originally assigned to Magistrate Judge Laporte. Due to a Declination to Proceed Before a Magistrate Judge, this matter was recently reassigned.

### 14. Other References

The parties do not believe the case is suitable for other reference.

### 15. Narrowing of Issues

The parties are not aware of any methods which would be useful to narrow the issues in the case at this point.

### 16. Expedited Schedule

The parties do not believe at this point that this is a case which can be handled using "streamlined" procedures.

### 17. Scheduling

Plaintiff seeks a trial date in late June 2008, with all other pre-trial dates to be set in accordance with the normal rules and procedures. However, Tandberg prefers a trial date in August 2008, with all other pre-trial dates to be set in accordance with the normal rules and procedures.

### 18. Trial

Plaintiff requests a jury trial. The parties anticipate a trial of approximately 5-8 days.

### 19. Disclosure of Non-Party Interested Entities or Persons

Plaintiff has filed a Certification as required by Local Rule 3-16.

Tandberg will file a Certification as required by Local Rule 3-16 as soon as possible and

9

prior to the Case Management Conference.

**20. Other Matters**

As noted in the Introductory Comment, Plaintiff is awaiting confirmation that Defendant Ericsson has been served in Sweden. Counsel for Plaintiff and Defendant Tandberg have been communicating well and working cooperatively thus far, and have been attempting to move the case forward despite the recently resolved absence of Defendant LME Ericsson.

Dated: August 9, 2007

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP

By: /s/ Geoffrey M. Hash
Stephen J. Hirschfeld
Geoffrey M. Hash

Attorneys for Defendants
TANDBERG TELEVISION, INC. and
TELEFONAKTIEBOLAGET LM
ERICSSON

Dated: August 9, 2007

MCGUINN, HILLSMAN & PALEFSKY

By:
Keith Ehrman

Attorneys for Plaintiff
JAMES OLSON

JOINT CMC STATEMENT
CASE NO.: C07-02480 PJH

1  prior to the Case Management Conference.

2  **20. Other Matters**

3  As noted in the Introductory Comment, Plaintiff is awaiting confirmation that Defendant Ericsson has been served in Sweden. Counsel for Plaintiff and Defendant Tandberg have been communicating well and working cooperatively thus far, and have been attempting to move the case forward despite the recently resolved absence of Defendant LME Ericsson.

Dated: August 9, 2007

CURIALE DELLAVERSON HIRSCHFELD
& KRAEMER, LLP

By:_____
Stephen J. Hirschfeld
Geoffrey M. Hash

Attorneys for Defendants
TANDBERG TELEVISION, INC. and
TELEFONAKTIEBOLAGET LM
ERICSSON

Dated: August 9, 2007

MCGUINN, HILLSMAN & PALEFSKY

By:_____
Keith Ehrman

Attorneys for Plaintiff
JAMES OLSON

JOINT CMC STATEMENT
CASE NO.: C07-02480 PJH