STEPHEN J. HIRSCHFELD (SBN 118068)
GEOFFREY M. HASH (SBN 227223)
CURIALE DELLAVERSON HIRSCHFELD
  & KRAEMER, LLP
727 Sansome Street
San Francisco, CA 94111
Telephone: (415) 835-9000
Facsimile: (415) 834-0443
E-mail: shirschfeld@cdhklaw.com
        ghash@cdhklaw.com

Attorneys for Defendants
TANDBERG TELEVISION, INC. and
TELEFONAKTIEBOLAGET LM ERICSSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Francisco Division)

| | |
|---|---|
| JAMES OLSON,<br><br>            Plaintiff,<br><br>vs.<br><br>TANDBERG TELEVISION, INC., a corporation, and TELEFONAKTIEBOLAGET LM ERICSSON, a corporation.<br><br>            Defendants. | Case No. C07-02480 PJH<br><br>**DEFENDANT TELEFONAKTIEBOLAGET LM ERICSSON'S ANSWER TO PLAINTIFF JAMES OLSON'S FIRST AMENDED COMPLAINT**<br><br>Case Mgmt. Conf: Aug. 16, 2007<br>FAC Filed:         June 8, 2007 |

Defendant TELEFONAKTIEBOLAGET LM ERICSSON ("LME ERICSSON") hereby answers the First Amended Complaint ("FAC") filed by Plaintiff James Olson ("Olson") as follows:

**JURISDICTION AND VENUE**

1.      In answer to Paragraph 1 of the FAC, LME ERICSSON does not contest the jurisdiction of this Court. LME ERICSSON admits that, at all relevant times, it has had its principal place of business in Sweden and has done business in California. Based upon information and belief LME ERICSSON admits that Defendant TANDBERG TELEVISION,

1  INC. ("TANDBERG") has, at all relevant times, done business in California and has been a
2  corporation incorporated under the laws of the state of Delaware, with its principal place of
3  business in the state of Georgia. LME ERICSSON has no personal knowledge of Olson's
4  residence and thus lacks sufficient information to admit or deny the same.

5        2.      In answer to Paragraph 2 of the FAC, LME ERICSSON does not contest that
6  venue is proper in this Court and admits that TANDBERG employed Olson. LME ERICSSON
7  lacks sufficient information to admit or deny the allegation that TANDBERG employed Olson in
8  Sunnyvale, California, specifically, and on that basis, denies this allegation (as to the geographic
9  location of Olson's employment with TANDBERG). LME ERICSSON neither admits nor denies
10 the remaining allegations in Paragraph 2 because they are legal conclusions and not averments of
11 fact. Except as expressly acknowledged herein, LME ERICSSON denies each and every
12 additional allegation contained in Paragraph 2.

### GENERAL ALLEGATIONS

14       3.      In answer to Paragraph 3 of the FAC, LME ERICSSON admits that it announced
15 the intention to acquire TANDBERG and acquired TANDBERG. LME ERICSSON denies that
16 it encouraged TANDBERG to terminate Olson's employment and further denies that it engaged
17 in any wrongful conduct. Except as expressly acknowledged herein, LME ERICSSON denies
18 each and every additional allegation contained in Paragraph 3 and therefore denies that Olson is
19 entitled to any damages.

20       4.      In answer to Paragraph 4 of the FAC, LME ERICSSON denies the allegations
21 contained in Paragraph 4.

22       5.      In answer to Paragraph 5 of the FAC, LME ERICSSON admits that it is possible
23 that there may have been documents relating to the written terms, if any, of Olson's employment
24 with SkyStream Corporation ("SkyStream") that were produced by TANDBERG in the course of
25 LME ERICSSON's due diligence investigation. However, LME ERICSSON denies that it had
26 specific knowledge of any specific written terms of Olson's employment with SkyStream, either
27 during the course of its due diligence review or at any other time prior to the termination of
28 Olson's employment with TANDBERG, and on this basis denies all allegations relating to

*Curiale Dellaverson Hirschfeld & Kraemer, LLP*
*Attorneys At Law*
*San Francisco*

1  Olson's employment with SkyStream as stated in Paragraph 5 of the FAC.  LME ERICSSON
2  lacks sufficient information to admit or deny that SkyStream was "recruiting" Olson to be its
3  President and CEO in June 1997 or that SkyStream was located in Mountain View, California,
4  and on that basis denies these allegations.  Except as expressly acknowledged herein, LME
5  ERICSSON denies each and every allegation contained in Paragraph 5.

6.  In answer to Paragraph 6 of the FAC, LME ERICSSON admits that it is possible that there may have been documents relating to the written terms, if any, of Olson's employment with SkyStream that were produced by TANDBERG in the course of LME ERICSSON's due diligence investigation.  However, LME ERICSSON denies that it had specific knowledge of any specific written terms of Olson's employment with SkyStream, either during the course of its due diligence review or at any other time prior to the termination of Olson's employment with TANDBERG, and on this basis denies all allegations relating to Olson's employment with SkyStream as stated in Paragraph 6 of the FAC.  LME ERICSSON lacks sufficient information to admit or deny any alleged implied or oral terms of Olson's employment with SkyStream, and on that basis denies them.  Except as expressly acknowledged herein, LME ERICSSON denies each and every allegation contained in Paragraph 6.

7.  In answer to Paragraph 7 of the FAC, LME ERICSSON admits that it is possible that there may have been documents relating to (1) the written terms, if any, and nature of Olson's employment with SkyStream and/or (2) TANDBERG's acquisition of SkyStream that were produced by TANDBERG in the course of LME ERICSSON's due diligence investigation.  However, LME ERICSSON denies that it had specific knowledge of (1) any specific written terms of Olson's employment with SkyStream, or (2) the specific terms of TANDBERG's acquisition of SkyStream, either during the course of its due diligence review or at any other time prior to the termination of Olson's employment with TANDBERG, and on this basis denies all allegations relating to Olson's employment with SkyStream and the terms of TANDBERG's acquisition of SkyStream, as stated in Paragraph 7 of the FAC.  Based upon information and belief, LME ERICSSON admits that, as a TANDBERG employee, Olson reported to Eric Cooney.  LME Ericsson lacks sufficient information of any alleged oral or implied terms of

3

DEFT. LME ERICSSON'S ANSWER TO FAC
CASE NO. C07-02480 PJH

Olson's employment with TANDBERG, and on that basis denies them. Except as expressly acknowledged herein, LME ERICSSON denies each and every allegation contained in Paragraph 7.

8. In answer to Paragraph 8 of the FAC, LME ERICSSON admits that it is possible that there may have been documents relating to (1) the written terms, if any, of Olson's employment with TANDBERG; and/or (2) the written terms, if any, of Olson's employment with SkyStream; and/or (3) TANDBERG's acquisition of SkyStream that were produced by TANDBERG in the course of LME ERICSSON's due diligence investigation. However, LME ERICSSON denies that it had specific knowledge of (1) any specific written terms of Olson's employment with TANDBERG (other than as admitted in Paragraph 9 below); or (2) any specific written terms of Olson's employment with SkyStream; or (3) the specific terms of TANDBERG's acquisition of SkyStream, either during the course of its due diligence review or at any other time prior to the termination of Olson's employment with TANDBERG, and on this basis denies all allegations relating to these allegations as stated in Paragraph 8 of the FAC. Except as expressly acknowledged herein, LME ERICSSON denies each and every allegation contained in Paragraph 8.

9. In answer to Paragraph 9 of the FAC, LME ERICSSON admits that it is possible that there may have been documents relating to various written stock option programs that were produced by TANDBERG in the course of LME ERICSSON's due diligence investigation. However, LME ERICSSON denies that it had specific knowledge of the specific terms of any such program as it related Olson, if any, either during the course of its due diligence review or at any other time prior to the termination of Olson's employment with TANDBERG, and on this basis denies all such allegations. Upon information and belief, LME ERICSSON admits that it understood Olson to be a participant in some form of TANDBERG-administered stock option program, and that Olson had 82,027 of some type of stock options under that program. LME ERICSSON lacks sufficient information to admit or deny any alleged oral or implied terms of Olson's employment with TANDBERG, and on that basis denies them. Except as expressly acknowledged herein, LME ERICSSON denies each and every additional allegation contained

4

1  Paragraph 9 on the basis that it lacks sufficient information to admit or deny the allegations.

2      10.    In answer to Paragraph 10 of the FAC, LME ERICSSON admits that it is possible that there may have been documents relating to (1) the written terms, if any, of Olson's employment with TANDBERG, or (2) the written terms, if any, of Olson's employment with SkyStream, and/or (3) bonuses paid to Olson's direct reports in 2007 that were produced by TANDBERG in the course of LME ERICSSON's due diligence investigation. However, LME ERICSSON denies that it had specific knowledge of (1) any specific written terms of Olson's employment with TANDBERG (other than as admitted in Paragraph 9 above); or (2) any specific written terms of Olson's employment with SkyStream; or (3) bonuses paid to Olson's direct reports in 2007, either during the course of its due diligence review or at any other time prior to the termination of Olson's employment with TANDBERG, and on this basis denies the allegations relating to (1) any bonus Olson allegedly received from SkyStream; (2) any bonus Olson was allegedly entitled to as a TANDBERG employee; and (3) any bonus paid to Olson's direct reports in 2007. LME ERICSSON further denies that it became specifically aware of any documents that it recognized to be an employment contract between Olson and TANDBERG, either during the course of its due diligence review or at any other time prior to the termination of Olson's employment with TANDBERG. Except as expressly acknowledged herein, LME ERICSSON denies each and every additional allegation contained in Paragraph 10.

     11.    In answer to Paragraph 11 of the FAC, LME ERICSSON admits that it is possible that there may have been documents relating to Olson's salary (*i.e.,* base salary and/or potential bonus) as a TANDBERG employee that were produced by TANDBERG in the course of LME ERICSSON's due diligence investigation. However, LME ERICSSON denies that it had specific knowledge of the specific terms of Olson's salary (*i.e.,* base salary and/or potential bonus) as a TANDBERG employee, either during the course of its due diligence review or at any other time prior to the termination of Olson's employment with TANDBERG, and on this basis denies this allegation. With respect to the assertion that one-third of Olson's alleged Restricted Share Units ("RSUs") vested (*i.e.,* became unrestricted) on January 31, 2007 pursuant to a "Restricted Stock Contract," LME ERICSSON neither admits nor denies this claim as it is a legal

conclusion and not an averment of fact.

12. In answer to Paragraph 12 of the FAC, LME ERICSSON admits that, in late 2006 and early 2007, it was a matter of public knowledge that TANDBERG was involved in some negotiations with companies that were interested in possibly acquiring TANDBERG, and that presumably, there was due diligence being performed in connection with these negotiations. However, LME ERICSSON denies that it had any actual or specific knowledge regarding the details of either these negotiations or any due diligence associated with such negotiations. On information and belief, LME ERICSSON admits that TANDBERG announced its earnings for Fiscal Year 2006 on or about February 8, 2007. LME ERICSSON further admits that in February 2007, it announced its intention to acquire TANDBERG and was seeking to purchase TANDBERG shares on the open market and from institutional shareholders. LME ERICSSON admits that by March 21, 2007, it had made an offer to acquire TANDBERG and had made known its intention to acquire TANDBERG by that date, though there was no certainty that such an attempt would be successful as of that date. LME ERICSSON lacks sufficient information to admit or deny the allegation that TANDBERG "executives believed that this offer would be accepted," and on that basis denies this allegation. LME ERICSSON admits that it was hopeful that the acquisition would formally close during the last week of April 2007.

13. In answer to Paragraph 13 of the FAC, LME ERICSSON neither admits nor denies that the acceleration and vesting would occur pursuant to a "Restricted Stock Contract" as this is a legal conclusion and not an averment of fact. LME ERICSSON admits that it is possible that there may have been documents relating to (1) the acceleration of Olson's unvested (*i.e.*, restricted) RSUs and/or (2) the value of Olson's unvested (*i.e.*, restricted) RSUs that were produced by TANDBERG in the course of LME ERICSSON's due diligence investigation. However, LME ERICSSON denies that it had specific knowledge of any acceleration terms or value of Olson's unvested (*i.e.*, restricted) RSUs, either during the course of its due diligence review or at any other time prior to the termination of Olson's employment with TANDBERG, and on this basis denies these allegations. LME ERICSSON further lacks sufficient information to admit or deny the allegation that, on or about March 21 and March 22, 2007, Cooney informed

Olson that he intended to eliminate Olson's position, thereby terminating Olson's employment with TANDBERG, and on that basis denies this allegation. LME ERICSSON also lacks sufficient information to admit or deny the allegation that Cooney, either at that time or at any other time, informed Olson that he (Cooney) intended to terminate him (Olson) prior to the closing of the LME ERICSSON merger in order to prevent Olson from vesting in his unvested (*i.e.*, restricted) RSUs, and on that basis denies this allegation. LME ERICSSON further lacks sufficient information to admit or deny the allegation that Cooney and Olson discussed the terms of the 2005 Stock Incentive Plan or that Olson would allegedly be entitled to acceleration and vesting of all (or any) unvested (*i.e.*, restricted) RSUs if he was actually employed by TANDBERG at the time of any change of control, including the completion of the LME ERICSSON acquisition, and on that basis denies this allegation. LME ERICSSON lacks sufficient information to admit or deny the allegation that Cooney "informed [Olson] that he had discussed [Olson's] accelerated stock vesting with Ericsson, and that [Olson's] stock vesting was a big concern to Ericsson," and on that basis denies this allegation. Finally, LME ERICSSON lacks sufficient information to admit or deny the allegation that Cooney "also indicated to Plaintiff that if he terminated Plaintiff at some point after the merger, he did not want to have to explain to Ericsson that [Olson] had already received $900,000 from his accelerated stock vesting" as this is currently alleged in Paragraph 13 of the FAC, and on that basis denies this allegation.

14. In answer to Paragraph 14 of the FAC, LME ERICSSON admits, on information and belief, that Olson's employment relationship with TANDBERG ended. LME ERICSSON lacks sufficient information to admit or deny the allegation that TANDBERG terminated Olson when it did "for the specific purpose of preventing [Olson] from receiving his unvested stock," and on that basis denies this allegation. LME ERICSSON further lacks sufficient information to admit or deny the allegation that Cooney "suggested that Plaintiff obtain a letter from a lawyer detailing why the termination was inappropriate and why he was entitled to his accelerated vesting . . . [and that he] indicated that he wanted to give the letter to Ericsson and discuss with them paying [Olson] some or all of the money he was owed as a result of the impending merger"

1  as alleged in Paragraph 14, and on that basis denies these allegations. Except as expressly
2  acknowledged herein, LME ERICSSON denies each and every additional allegation contained in
3  Paragraph 14.

4      15.    In answer to Paragraph 15 of the FAC, LME ERICSSON admits that it is possible
5  that there may have been documents relating to the written terms, if any, of Olson's employment
6  with TANDBERG that were produced by TANDBERG in the course of LME ERICSSON's due
7  diligence investigation. However, LME ERICSSON denies that it had specific knowledge of any
8  specific written term of Olson's employment with TANDBERG (other than as admitted in
9  Paragraph 9 above) and on this basis denies the allegations relating to terms, if any, of Olson's
10 alleged contract with TANDBERG. LME ERICSSON denies having any communications with
11 Olson concerning, or being involved in any way with, a release, additional stock vesting,
12 health/insurance premiums and benefits, or severance issues between TANDBERG and Olson.
13 LME ERICSSON lacks sufficient information to either admit or deny the remaining allegations in
14 Paragraph 15, and on that basis denies each and every one.

15     16.    In answer to Paragraph 16 of the FAC, LME ERICSSON admits that it is possible
16 that there may have been documents relating to bonuses paid to Olson's direct reports in 2007
17 that were produced by TANDBERG in the course of LME ERICSSON's due diligence
18 investigation. However, LME ERICSSON denies that it had specific knowledge regarding any
19 bonuses paid to Olson's direct reports in 2007, either during the course of its due diligence review
20 or at any other time prior to the termination of Olson's employment with TANDBERG, and on
21 this basis denies the allegations relating to any bonus paid to Olson's direct reports in 2007.
22 LME ERICSSON lacks sufficient information to either admit or deny the allegation that
23 TANDBERG informed Olson that he would receive no performance-based bonus for 2006 and,
24 and on that basis denies these allegations. LME ERICSSON lacks sufficient information to either
25 admit or deny the remaining allegations in Paragraph 16, and on that basis denies each and every
26 one.
27 ///
28 ///

DEFT. LME ERICSSON'S ANSWER TO FAC
CASE NO. C07-02480 PJH

## SIXTH CAUSE OF ACTION

**(Tortious Interference with Contract Against LME ERICSSON)**

42. In answer to Paragraph 42 of the FAC, LME ERICSSON realleges and incorporates by reference its answers to Paragraphs 1 through 16 of the FAC as if set forth fully herein.

43. In answer to Paragraph 43 of the FAC, LME ERICSSON admits that it was engaged in negotiations with TANDBERG regarding its acquisition of TANDBERG. LME ERICSSON further admits that it is possible that there may have been documents relating to Olson's employment that were produced by TANDBERG in the course of LME ERICSSON'S due diligence investigation. However, LME ERICSSON denies that it had specific knowledge of the specific terms of Olson's employment with TANDBERG, either during the course of its due diligence review or at any other time prior to the termination of Olson's employment with TANDBERG. LME ERICSSON further denies that it became specifically aware of any documents that it recognized to be an employment contract between Olson and TANDBERG, either during the course of its due diligence review or at any other time prior to the termination of Olson's employment with TANDBERG. LME ERICSSON admits that it is possible that there may have been documents relating to (1) the acceleration of Olson's unvested (*i.e.*, restricted) RSUs and/or (2) the value of Olson's unvested (*i.e.*, restricted) RSUs that were produced by TANDBERG in the course of LME ERICSSON's due diligence investigation. However, LME ERICSSON denies that it had specific knowledge of any acceleration terms or value of Olson's unvested (*i.e.*, restricted) RSUs, either during the course of its due diligence review or at any other time prior to the termination of Olson's employment with TANDBERG, and on this basis denies these allegations. Except as expressly acknowledged herein, LME ERICSSON denies each and every additional allegation contained in Paragraph 43.

44. In answer to Paragraph 44 of the FAC, LME ERICSSON denies each and every additional allegation contained in Paragraph 44.

45. In answer to Paragraph 45 of the FAC, LME ERICSSON denies each and every allegation contained therein.

DEFT. LME ERICSSON'S ANSWER TO FAC
CASE NO. C07-02480 PJH

1    46.    In answer to Paragraph 46 of the FAC, LME ERICSSON denies each and every allegation contained therein.

2    47.    In answer to Paragraph 47 of the FAC, LME ERICSSON denies each and every allegation contained therein.

LME ERICSSON also denies the prayer for relief found on page 15, lines 9 through 17 of the FAC.

## AFFIRMATIVE AND OTHER DEFENSES

LME ERICSSON hereby asserts the following affirmative and other defenses to Olson's FAC:

### FIRST DEFENSE
### (Failure to State a Cause of Action)

As a defense to Olson's Sixth Cause of Action, LME ERICSSON asserts that Olson fails to state facts sufficient to constitute a cause of action for Tortious Interference with Contract against LME ERICSSON.

### SECOND DEFENSE
### (Employment At-Will)

As a defense to Olson's Sixth Cause of Action, LME ERICSSON asserts that Olson was an at-will employee within the meaning of California Labor Code section 2922.

### THIRD DEFENSE
### (Statute of Limitations)

As a defense to Olson's Sixth Cause of Action, LME ERICSSON asserts that this claim is barred by the applicable statutes of limitations.

### FOURTH DEFENSE
### (Failure to Mitigate)

As a defense to Olson's Sixth Cause of Action, LME ERICSSON asserts that Olson has failed to mitigate his damages by exercising reasonable diligence to find comparable employment.

///

DEFT. LME ERICSSON'S ANSWER TO FAC
CASE NO. C07-02480 PJH

**FIFTH DEFENSE**

**(Waiver/Estoppel/Laches/Unclean Hands)**

As a defense to Olson's Sixth Cause of Action, LME ERICSSON asserts that the claim is barred by the equitable doctrines of waiver, estoppel, laches and unclean hands.

**SIXTH DEFENSE**

**(Plaintiff's Negligent, Intentional and/or Bad Faith Conduct)**

As a defense to Olson's Sixth Cause of Action, LME ERICSSON asserts that the claim is barred by Olson's negligent, intentional and/or bad faith conduct.

**SEVENTH DEFENSE**

**(Good Faith)**

As a defense to Olson's Sixth Cause of Action, LME ERICSSON asserts that at all times it acted without malice and with the good faith belief in the propriety of its conduct.

**EIGHTH DEFENSE**

**(Failure to State Punitive Damages Claim)**

As a defense to Olson's prayer for punitive damages, LME ERICSSON asserts that Olson has failed to state facts sufficient to state a claim for punitive damages.

**NINTH DEFENSE**

**(Punitive Damages)**

As a defense to Olson's prayer for punitive damages, LME ERICSSON asserts that Olson's claims for punitive damages are barred by the California and United States Constitutions.

**TENTH DEFENSE**

**(Attorneys' Fees)**

As a defense to Olson's prayer for attorneys' fees, LME ERICSSON asserts that Olson has failed to state facts sufficient to recover attorneys' fees.

**ELEVENTH DEFENSE**

(Privilege)

As a defense to Olson's Sixth Cause of Action, LME ERICSSON asserts that any acts allegedly taken by LME ERICSSON with respect to all matters which are the subject matter of this litigation, if performed at all, were privileged under California law.

### TWELTH DEFENSE

(Justification)

As a defense to Olson's Sixth Cause of Action, LME Ericsson asserts that any acts allegedly taken by LME ERICSSON with respect to all matters which are the subject matter of this litigation, if performed at all, were justified under California law.

### THIRTEENTH DEFENSE

(One Satisfaction)

As a defense to Olson's Sixth Cause of Action, LME Ericsson asserts that Olson cannot properly recover actual and punitive damages under multiple or different theories and causes of action for the same or similar alleged acts.

### FOURTEENTH DEFENSE

(Offset)

As a defense to both Olson's Sixth Cause of Action and any claim by Olson, either explicit or implicit, alleging breach of contract or violation of the covenant of good faith and fair dealing by LME ERICSSON, LME ERICSSON asserts that any recovery on Olson's FAC or any purported cause of action alleged therein is barred, either in whole or in part, by the equitable doctrine of offset.

### FIFTEENTH DEFENSE

(Rescission/Modification)

As a defense to both Olson's Sixth Cause of Action and any claim by Olson, either explicit or implicit, alleging breach of contract or violation of the covenant of good faith and fair dealing by LME ERICSSON, LME ERICSSON asserts that any recovery on Olson's FAC or any purported cause of action alleged therein is barred by the doctrines of rescission and/or modification.

## SIXTEENTH DEFENSE

### (Lack of Consideration)

As a defense to both Olson's Sixth Cause of Action and any claim by Olson, either explicit or implicit, alleging breach of contract or violation of the covenant of good faith and fair dealing by LME ERICSSON, LME ERICSSON asserts that any recovery on Olson's FAC or any purported cause of action alleged therein is barred by Olson's failure to provide consideration in the form of services owed to Defendant TANDBERG.

## SEVENTEENTH DEFENSE

### (Accord/Satisfaction)

As a defense to both Olson's Sixth Cause of Action and any claim by Olson, either explicit or implicit, alleging breach of contract or violation of the covenant of good faith and fair dealing by LME ERICSSON, LME ERICSSON asserts that any recovery on Olson's FAC or any purported cause of action alleged therein is barred by the doctrines of accord and/or satisfaction.

## EIGHTEENTH DEFENSE

### (Parol Evidence)

As a defense to both Olson's Sixth Cause of Action and any claim by Olson, either explicit or implicit, alleging breach of contract or violation of the covenant of good faith and fair dealing by LME ERICSSON, LME Ericsson asserts that Olson's FAC refers to alleged oral agreements contradicting an integrated written contract for at-will employment, in violation of the Parol Evidence Rule.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Failure of Condition Precedent)

As a defense to both Olson's Sixth Cause of Action and any claim by Olson, either explicit or implicit, alleging breach of contract or violation of the covenant of good faith and fair dealing by LME ERICSSON, LME ERICSSON asserts that any recovery on Olson's FAC or any purported cause of action alleged therein is barred by Olson's failure to perform a condition precedent to Defendant TANDBERG's performance.

DEFT. LME ERICSSON'S ANSWER TO FAC
CASE NO. C07-02480 PJH

## TWENTIETH AFFIRMATIVE DEFENSE

### (Lack of Privity)

As a defense to both Olson's Sixth Cause of Action and any claim by Olson, either explicit or implicit, alleging breach of contract or violation of the covenant of good faith and fair dealing by LME ERICSSON, LME ERICSSON asserts that Olson's FAC and any purported cause of action alleged against Defendant LME ERICSSON is barred by lack of privity.

## PRAYER FOR RELIEF

WHEREFORE, LME ERICSSON prays that:

1. Olson's FAC be dismissed in its entirety with prejudice;
2. Olson take nothing by this action;
3. The Court issue judgment in favor of LME ERICSSON; and
4. LME ERICSSON be awarded its costs of suit, including attorneys' fees, and such other relief as the Court may deem just and proper.

Dated: August 9, 2007

CURIALE DELLAVERSON HIRSCHFELD
& KRAEMER, LLP


By: /s/ Geoffrey M. Hash
Stephen J. Hirschfeld
Geoffrey M. Hash

Attorneys for Defendants
TANDBERG TELEVISION, INC. and
TELEFONAKTIEBOLAGET LM
ERICSSON

DEFT. LME ERICSSON'S ANSWER TO FAC
CASE NO. C07-02480 PJH