STEPHEN J. HIRSCHFELD (SBN 118068)
GEOFFREY M. HASH (SBN 227223)
CURIALE DELLAVERSON HIRSCHFELD
 & KRAEMER, LLP
727 Sansome Street
San Francisco, CA 94111
Telephone: (415) 835-9000
Facsimile: (415) 834-0443
E-mail: shirschfeld@cdhklaw.com
        ghash@cdhklaw.com

Attorneys for Defendants
TANDBERG TELEVISION, INC. and
TELEFONAKTIEBOLAGET LM ERICSSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Francisco Division)

| | |
|---|---|
| JAMES OLSON,<br><br>                Plaintiff,<br><br>vs.<br><br>TANDBERG TELEVISION, INC., a corporation, and<br>TELEFONAKTIEBOLAGET LM ERICSSON, a corporation.<br><br>                Defendants. | Case No. C07-02480 PJH<br><br>**E-FILING CASE**<br><br>**DEFENDANT TANDBERG TELEVISION, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF JAMES OLSON'S FIRST AMENDED COMPLAINT.**<br><br>**Further CMC:**  Jan. 10, 2008<br>**FAC Filed:**    June 8, 2007 |

Defendant TANDBERG Television, Inc ("TANDBERG") hereby amends its answer to the First Amended Complaint ("FAC") filed by Plaintiff James Olson ("Olson") as follows:

**JURISDICTION AND VENUE**

1.  In answer to Paragraph 1 of the FAC, TANDBERG does not contest the jurisdiction of this Court. TANDBERG admits that, at all relevant times, it has done business in California and has been a corporation incorporated under the laws of the state of Delaware, with its principal place of business in the state of Georgia. Based upon information and belief

TANDBERG admits that Defendant TELEFONAKTIEBOLAGET LM ERICSSON ("LME ERICSSON") has, at all relevant times, had its principal place of business in Sweden and has done business in California.

2. In answer to Paragraph 2 of the FAC, TANDBERG does not contest that venue is proper in this Court and admits that Olson was employed in Sunnyvale, California. TANDBERG neither admits nor denies the remaining allegations in Paragraph 2 because they are legal conclusions and not averments of fact.

### GENERAL ALLEGATIONS

3. In answer to Paragraph 3 of the FAC, TANDBERG neither admits nor denies the allegations in Paragraph 3 because they are legal conclusions and not averments of fact.

4. In answer to Paragraph 4 of the FAC, TANDBERG neither admits nor denies the allegations in Paragraph 4 because they are legal conclusions and not averments of fact.

5. In answer to Paragraph 5 of the FAC, TANDBERG lacks sufficient information to admit or deny any of the allegations contained therein, and on that basis denies them.

6. In answer to Paragraph 6 of the FAC, TANDBERG lacks sufficient information to admit or deny the allegations contained therein, and on that basis denies them.

7. In answer to Paragraph 7 of the FAC, TANDBERG lacks sufficient information to admit or deny the allegations regarding Olson's employment with SkyStream, and, on that basis, denies them. TANDBERG admits that it acquired SkyStream in March 2006. TANDBERG further admits that it became responsible for various contractual obligations and liabilities of SkyStream under the Merger Agreement. However, TANDBERG denies that it specifically assumed obligations contained in Olson's 1997 SkyStream Employment Agreement. TANDBERG admits that Olson became the Executive Vice President of Compression Systems for TANDBERG, reporting to Eric Cooney, CEO of the parent company of TANDBERG (TANDBERG Television ASA). However, TANDBERG asserts that the only contract entered into with Olson at any time was that of an "at-will" employment contract and denies that it entered into anything other than an "at-will" employment contract with Olson.

8. In answer to Paragraph 8 of the FAC, TANDBERG denies each and every

allegation contained therein.

9. In answer to Paragraph 9 of the FAC, TANDBERG neither admits nor denies the allegations that its Stock Incentive Plan ("SIP") or the "Long Term Incentive Plan" ("LTIP") constituted a "Restricted Stock Contract" and that it entered into such a "Restricted Stock Contract" with Olson as these allegations are legal conclusions and not averments of fact. TANDBERG admits that it granted Olson 82,027 Restricted Share Units ("RSUs") of TANDBERG stock on or about March 30, 2006, subject to the terms of the TANDBERG TELEVISION ASA 2005 Stock Incentive Plan – Restricted Stock Unit Agreement ("2005 Stock Incentive Plan") and that, under that plan, one third of these RSUs (27,342 RSUs) vested (*i.e.,* became unrestricted) on January 31 of 2007, 2008, and 2009 respectively. TANDBERG further admits that under the terms of this 2005 Stock Incentive Plan, all of Olson's RSUs would immediately accelerate and become vested (unrestricted) upon a "change of control" of TANDBERG, provided that Olson was still employed by TANDBERG at the time of the change of control. TANDBERG neither admits nor denies the allegation that the terms of the 2005 Stock Incentive Plan became part of, and were incorporated into, Olson's Tandberg Employment Contract as this is a legal conclusion and not an averment of fact. TANDBERG further states that Olson's employment was at all times "at-will" and that the 2005 Stock Incentive Plan did not alter the terms of Olson's at-will employment with TANDBERG. Except as is expressly acknowledged herein, TANDBERG denies each and every additional allegation contained in Paragraph 9.

10. In answer to Paragraph 10 of the FAC, TANDBERG lacks sufficient information to admit or deny the allegations contained therein regarding the terms of Olson's employment with SkyStream, and on that basis denies them. TANDBERG further denies that Olson was "entitled" to an annual bonus pursuant to the terms of any "Employment Contract." TANDBERG admits that Olson was eligible to receive a bonus for 2006 of up to 20% of his base salary, and that such a bonus, if any was based upon his job performance, but denies that he was "entitled" to actually receive any bonus. TANDBERG admits that Olson's three direct reports received bonuses for 2006. Except as is expressly acknowledged herein, TANDBERG denies each and

3

every additional allegation contained in Paragraph 10.

11.     In answer to Paragraph 11 of the FAC, TANDBERG admits that during 2006, Olson's base salary at TANDBERG was $247,500. TANDBERG denies that Olson received a "performance-based" salary increase effective January 1, 2007 on January 23, 2007 and alleges that this increase was an administrative error. TANDBERG asserts that, because of this administrative error, TANDBERG inadvertently began to pay Olson a salary of $252,450 effective January 1, 2007. TANDBERG admits that Olson was notified that he would be eligible during 2007 for an annual performance based bonus of up to 20% of his base salary, but denies that he was entitled to actually receive any bonus for 2007. TANDBERG further asserts that the communication Olson received regarding the 2007 bonus and change in base salary was provided in error because, as he was informed by written communication in December 2006, he was not to receive either that information or any actual bonus or salary increase until February 2007, after TANDBERG announced its earnings for the Fourth Quarter and Fiscal Year of 2006. TANDBERG admits that the first one-third of Olson's RSUs vested (became unrestricted) on January 31, 2007, but again neither admits nor denies that this occurred pursuant to a "Restricted Stock Contract" as this is a legal conclusion and not an averment of fact.

12.     In answer to Paragraph 12 of the FAC, TANDBERG lacks sufficient information to admit or deny the allegation that TANDBERG "executives believed that this offer would be accepted," and on that basis denies this allegation. TANDBERG admits that, at various times between December 2006 and March 2007, it was involved in negotiations and due diligence review with various companies that were interested in acquiring TANDBERG. TANDBERG further admits that it announced its earnings for Fiscal Year 2006 on or about February 8, 2007. TANDBERG further admits that in February 2007, LME ERICSSON announced its intention to acquire TANDBERG and was seeking to purchase TANDBERG shares on the open market and from institutional share holders. TANDBERG admits that by March 21, 2007, LME ERICSSON had made an offer to acquire TANDBERG and had made known its intention to acquire TANDBERG by that date, though there was no certainty that such an attempt would be successful as of that date. TANDBERG further admits that it was hopeful that the acquisition would

4

formally close during the last week of April 2007.

13. In answer to Paragraph 13 of the FAC, TANDBERG neither admits nor denies that the acceleration and vesting would occur pursuant to a "Restricted Stock Contract" as this is a legal conclusion and not an averment of fact. However, TANDBERG admits that upon a change in control, any of Olson's unvested RSUs would immediately accelerate and become shares under the terms of the 2005 Stock Incentive Plan. TANDBERG further admits that the unvested (restricted) portion of Olson's RSUs was worth approximately $900,000. TANDBERG admits that, on or about March 21 and March 22, 2007, Cooney informed Olson that he intended to eliminate Olson's position, thereby terminating Olson's employment with TANDBERG. TANDBERG expressly denies that Cooney, either at that time or at any other time, stated that he intended to terminate Olson prior to the closing of the LME ERICSSON merger in order to prevent Olson from vesting in his unvested RSUs. TANDBERG asserts that no such statement was ever made by Cooney to Olson and that the decision to eliminate Olson's position at that time was made for legitimate business reasons. TANDBERG admits that Cooney and Olson did discuss the fact that, under the express terms of the 2005 Stock Incentive Plan, Olson would be entitled to acceleration and vesting of all unvested RSUs if he was actually employed by TANDBERG at the time of any change of control, including the completion of the LME ERICSSON acquisition. TANDBERG denies that Cooney "informed [Olson] that he had discussed [Olson's] accelerated stock vesting with Ericsson, and that [Olson's] stock vesting was a big concern to Ericsson." Finally, TANDBERG denies that Cooney "also indicated to Plaintiff that if he terminated Plaintiff at some point after the merger, he did not want to have to explain to Ericsson that [Olson] had already received $900,000 from his accelerated stock vesting" as this is currently alleged in Paragraph 13 of the FAC. TANDBERG makes this denial on the grounds that Olson has taken this statement so completely out of context that it is in fact a gross misrepresentation of both: (a) what was actually said; and (b) the nature and purpose of the conversation wherein such topics were discussed by Olson and Cooney. Except as is expressly acknowledged herein, TANDBERG denies each and every additional allegation contained in Paragraph 13.

14.   In answer to Paragraph 14 of the FAC, TANDBERG admits that it terminated Olson's employment on March 22, 2007. TANDBERG denies that it terminated Olson when it did "for the specific purpose of preventing [Olson] from receiving his unvested stock." TANDBERG further denies that Cooney "suggested that Plaintiff obtain a letter from a lawyer detailing why the termination was inappropriate and why he was entitled to his accelerated vesting . . . [and that he] indicated that he wanted to give the letter to Ericsson and discuss with them paying [Olson] some or all of the money he was owed as a result of the impending merger" as alleged in Paragraph 14. First, TANDBERG expressly denies that Cooney made any representation or statement, explicit or implicit, that he would either give this letter to LME ERICSSON or discuss with LME ERICSSON the payment of any money to Olson in connection with the acquisition upon receipt of such a letter. Second, with respect to the allegation that Cooney "suggested that Plaintiff obtain a letter from a lawyer detailing why the termination was inappropriate and why he was entitled to his accelerated vesting," TANDBERG denies this on the grounds that Olson has again taken a statement so completely out of context that it is in fact a gross misrepresentation of both: (a) what was actually said; and (b) the nature and purpose of the conversation wherein such topics were discussed by Olson and Cooney. Except as is expressly acknowledged herein, TANDBERG denies each and every additional allegation contained in Paragraph 14.

15.   In answer to Paragraph 15 of the FAC, TANDBERG denies that Olson was entitled to anything, pursuant to any alleged "employment contract" or otherwise, upon his termination. TANDBERG admits that it offered Olson certain severance benefits to which he was not otherwise entitled in exchange for his execution of a general release. Except as is expressly acknowledged herein, TANDBERG denies each and every additional allegation contained therein.

16.   In answer to Paragraph 16 of the FAC, TANDBERG admits that it informed Olson that he would receive no performance-based bonus for 2006, and further admits that it awarded annual bonuses for 2006 in March 2007 to employees, including Olson's three direct reports. Except as is expressly acknowledged herein, TANDBERG denies each and every additional

allegation contained in Paragraph 16.

## FIRST CAUSE OF ACTION

### (Breach of Contract Against Tandberg)

17. In answer to Paragraph 17 of the FAC, TANDBERG realleges and incorporates by reference its answers to Paragraphs 1 through 16 of the FAC as if set forth fully herein.

18. In answer to Paragraph 18 of the FAC, TANDBERG neither admits nor denies the allegations in Paragraph 18 because they are legal conclusions and not averments of fact.

19. In answer to Paragraph 19 of the FAC, based upon information and belief TANDBERG admits that under the 2005 Stock Incentive Plan, upon a change of control of TANDBERG, all of Olson's RSUs would immediately accelerate and become vested (unrestricted), provided he was still employed at the time of the change of control. TANDBERG neither admits nor denies the allegations in Paragraph 19 regarding the covenant of good faith and fair dealing because they are legal conclusions and not averments of fact. Except for as is expressly admitted herein, TANDBERG denies each and every allegation in Paragraph 19.

20. In answer to Paragraph 20 of the FAC, TANDBERG denies each and every allegation contained therein.

21. In answer to Paragraph 21 of the FAC, TANDBERG denies each and every allegation contained therein.

## SECOND CAUSE OF ACTION

### (Breach of Contract Against Tandberg)

22. In answer to Paragraph 22 of the FAC, TANDBERG realleges and incorporates by reference its answers to Paragraphs 1 through 21 of the FAC as if set forth fully herein.

23. In answer to Paragraph 23 of the FAC, TANDBERG denies each and every allegation contained therein.

24. In answer to Paragraph 24 of the FAC, TANDBERG denies each and every allegation contained therein.

25. In answer to Paragraph 25 of the FAC, TANDBERG denies each and every allegation contained therein.

7

## THIRD CAUSE OF ACTION

### (Breach of Contract Against Tandberg)

26. In answer to Paragraph 26 of the FAC, TANDBERG realleges and incorporates by reference its answers to Paragraphs 1 through 25 of the FAC as if set forth fully herein.

27. In answer to Paragraph 27 of the FAC, TANDBERG denies each and every allegation contained therein.

28. In answer to Paragraph 28 of the FAC, TANDBERG admits that it paid no bonus to Olson for either 2006 or 2007. TANDBERG neither admits nor denies the allegations in Paragraph 28 regarding the covenant of good faith and fair dealing because they are legal conclusions and not averments of fact. Except for as is expressly acknowledged herein, TANDBERG denies each and every allegation in Paragraph 28.

29. In answer to Paragraph 29 of the FAC, TANDBERG denies each and every allegation contained therein.

30. In answer to Paragraph 30 of the FAC, TANDBERG denies each and every allegation contained therein.

## FOURTH CAUSE OF ACTION

### (Violation of Labor Code Section 201 Against Tandberg)

31. In answer to Paragraph 31 of the FAC, TANDBERG realleges and incorporates by reference its answers to Paragraphs 1 through 30 of the FAC as if set forth fully herein.

32. In answer to Paragraph 32 of the FAC, TANDBERG denies each and every allegation contained therein.

33. In answer to Paragraph 33 of the FAC, TANDBERG denies that there was any violation of California Labor Code Section 201 and denies each and every allegation contained in Paragraph 33.

34. In answer to Paragraph 34 of the FAC, TANDBERG denies each and every allegation contained therein.

///

///

DEFT. TANDBERG'S FIRST AMENDED ANSWER TO FAC
CASE NO. C07-02480 - PJH

## FIFTH CAUSE OF ACTION

**(Violation of Labor Code Sections 216 And 206.5 Against Tandberg)**

35. In answer to Paragraph 35 of the FAC, TANDBERG realleges and incorporates by reference its answers to Paragraphs 1 through 34 of the FAC as if set forth fully herein.

36. In answer to Paragraph 36 of the FAC, TANDBERG denies each and every allegation contained therein.

37. In answer to Paragraph 37 of the FAC, TANDBERG denies that there was any violation of California Labor Code Section 216 and denies each and every allegation contained in Paragraph 37.

38. In answer to Paragraph 38 of the FAC, TANDBERG denies that there was any violation of California Labor Code Section 206.5 and denies each and every allegation contained in Paragraph 38.

39. In answer to Paragraph 39 of the FAC, TANDBERG admits that it requested Olson execute a general release in exchange for severance benefits to which Olson was not otherwise entitled. Except for as is expressly acknowledged, TANDBERG denies each and every allegation contained in Paragraph 39.

40. In answer to Paragraph 40 of the FAC, TANDBERG denies each and every allegation contained therein.

41. In answer to Paragraph 41 of the FAC, TANDBERG denies each and every allegation contained therein.

TANDBERG also denies the prayer for damages found on page 15, lines 9 through 17 of the FAC.

## **AFFIRMATIVE AND OTHER DEFENSES**

TANDBERG hereby asserts the following affirmative and other defenses to Olson's FAC:

## **FIRST DEFENSE**

**(Failure to State a Cause of Action)**

As a defense to each of Olson's claims, TANDBERG asserts that Olson fails to state facts sufficient to constitute any cause of action against TANDBERG.

## SECOND DEFENSE

### (Employment At-Will)

As a defense to each of Olson's causes of action, TANDBERG asserts that Olson was an at-will employee within the meaning of Labor Code section 2922.

## THIRD DEFENSE

### (Statute of Limitations)

As a defense to each of Olson's claims, TANDBERG asserts that these claims, in whole or in part, are barred by the applicable statutes of limitations.

## FOURTH DEFENSE

### (Legitimate Exercise of Management Discretion)

As a defense to each of Olson's claims, TANDBERG asserts that Olson's claims are barred because all decisions related to Olson's employment and the termination thereof were a just and proper exercise of management discretion on the part of TANDBERG, including its agents and employees, and were based on legitimate, non-discriminatory reasons which TANDBERG believed in good faith under the circumstances existing at the time.

## FIFTH DEFENSE

### (After-Acquired Evidence)

As a defense to each of Olson's causes of action, TANDBERG asserts that Olson's claims and remedies are barred by the doctrine of after-acquired evidence.

## SIXTH DEFENSE

### (Failure to Mitigate)

As a defense to each of Olson's claims, TANDBERG asserts that Olson has failed to mitigate his damages by exercising reasonable diligence to find comparable employment.

## SEVENTH DEFENSE

### (Waiver/Estoppel/Laches/Unclean Hands)

As a defense to each of Olson's claims, TANDBERG asserts that the claims are barred by the equitable doctrines of waiver, estoppel, laches and unclean hands.

///

## EIGHTH DEFENSE

### (Plaintiff's Negligent, Intentional and/or Bad Faith Conduct)

As a defense to each of Olson's claims, TANDBERG asserts that the claims are barred by Olson's negligent, intentional and/or bad faith conduct.

## NINTH DEFENSE

### (Good Faith)

As a defense to each of Olson's claims, TANDBERG asserts that at all times it acted without malice and with the good faith belief in the propriety of its conduct.

## TENTH DEFENSE

### (Failure to State Punitive Damages Claim)

As a defense to Olson's prayer for punitive damages, TANDBERG asserts that Olson has failed to state facts sufficient to state a claim for punitive damages.

## ELEVENTH DEFENSE

### (Punitive Damages)

As a defense to Olson's prayer for punitive damages, TANDBERG asserts that Olson's claims for punitive damages are barred by the California and United States Constitutions.

## TWELFTH DEFENSE

### (Attorneys' Fees)

As a defense to Olson's prayer for attorneys' fees, TANDBERG asserts that Olson has failed to state facts sufficient to recover attorneys' fees.

## THIRTEENTH DEFENSE

### (Privilege)

As a defense to each of Olson's claims, TANDBERG asserts that any acts by TANDBERG regarding Olson, with respect to all matters which are the subject matter of this litigation, were privileged under California law.

///

///

///

## FOURTEENTH DEFENSE

### (Justification)

As a defense to each of Olson's claims, TANDBERG asserts that any acts allegedly taken by TANDBERG with respect to all matters which are the subject matter of this litigation, if performed at all, were justified under California law.

## FIFTEENTH DEFENSE

### (One Satisfaction)

As a defense to each of Olson's claims, TANDBERG asserts that Olson cannot properly recover actual and punitive damages under multiple or different theories and causes of action for the same or similar alleged acts.

## SIXTEENTH DEFENSE

### (Offset)

As a defense to each of Olson's claims, TANDBERG asserts that any recovery on Olson's FAC or any purported cause of action alleged therein is barred, either in whole or in part, by the equitable doctrine of offset.

## SEVENTEENTH DEFENSE

### (Rescission/Modification)

As a defense to each of Olson's claims, TANDBERG asserts that any recovery on Olson's FAC or any purported cause of action alleged therein is barred by the doctrines of rescission and/or modification.

## EIGHTEENTH DEFENSE

### (Lack of Consideration)

As a defense to each of Olson's claims, TANDBERG asserts that any recovery on Olson's FAC or any purported cause of action alleged therein is barred by Olson's failure to provide consideration in the form of services owed to TANDBERG.

## NINETEENTH DEFENSE

### (Accord/Satisfaction)

As a defense to each of Olson's claims, TANDBERG asserts that any recovery on Olson's

DEFT. TANDBERG'S FIRST AMENDED ANSWER TO FAC
CASE NO. C07-02480 - PJH

FAC or any purported cause of action alleged therein is barred by the doctrines of accord and/or satisfaction.

### TWENTIETH DEFENSE

**(Parol Evidence)**

As a defense to each of Olson's claims, TANDBERG asserts that Olson's FAC refers to alleged oral agreements contradicting an integrated written contract for at-will employment, in violation of the Parol Evidence Rule.

### TWENTY-FIRST DEFENSE

**(Failure of Condition Precedent)**

As a defense to each of Olson's claims, TANDBERG asserts that any recovery on Olson's FAC or any purported cause of action alleged therein is barred by Olson's failure to perform a condition precedent to TANDBERG's performance.

### TWENTY-SECOND DEFENSE

**(Lack of Privity)**

As a defense to any purported cause of action against TANDBERG based upon any alleged agreements between Olson and any entity other than TANDBERG (whether written or verbal, express or implied), TANDBERG asserts that any such claim is barred by lack of privity between Olson and TANDBERG.

### PRAYER FOR RELIEF

WHEREFORE, TANDBERG prays that:

1. Olson's FAC be dismissed in its entirety with prejudice;
2. Olson take nothing by this action;
3. The Court issue judgment in favor of TANDBERG; and
4. TANDBERG be awarded its costs of suit, including attorneys' fees, and such other relief as the Court may deem just and proper.

///

///

///

Case 3:07-cv-02480-PJH   Document 23   Filed 08/24/2007   Page 14 of 14

Dated: August 24, 2007

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP

By: /s/ Geoffrey M. Hash
    Stephen J. Hirschfeld
    Geoffrey M. Hash
Attorneys for Defendants
TANDBERG TELEVISION, INC. and
TELEFONAKTIEBOLAGET LM
ERICSSON

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFT. TANDBERG'S FIRST AMENDED ANSWER TO FAC
CASE NO. C07-02480 - PJH