Cliff Palefsky, Esq. (State Bar No. 77683)
Keith Ehrman, Esq. (State Bar No. 106985)
McGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 421-9292

Attorneys for Plaintiff
JAMES OLSON

Stephen J. Hirschfeld (SBN118068)
Geoffrey M. Hash (SBN 227223)
CURIALE DELLAVERSON
 HIRSCHFELD & KRAEMER, LLP
727 Sansome Street
San Francisco, CA 94111
Telephone: (415) 835-9000
Facsimile: (415) 834-0443
E-mail: shirschfeld@cdhklaw.com
      ghash@cdhklaw.com

Attorneys for Defendants
TANDBERG TELEVISION, INC. and
TELEFONAKTIEBOLAGET LM ERICSSON

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (San Francisco Division)

| | |
|---|---|
| JAMES OLSON,<br><br>            Plaintiff,<br><br>vs.<br><br>TANDBERG TELEVISION, INC., a<br>corporation, and<br>TELEFONAKTIEBOLAGET LM<br>ERICSSON, a corporation.<br><br>            Defendants. | Case No.  C07-02480 PJH<br><br>E-FILING CASE<br><br>**JOINT CASE MANAGEMENT<br>CONFERENCE STATEMENT**<br><br>**Date:        January 10, 2008**<br>**Time:        2:30 p.m.**<br>**Courtroom:   3, 17th Floor**<br><br>**Hon. Phyllis J. Hamilton** |

    Plaintiff JAMES OLSON ("Olson") and Defendants TANDBERG TELEVISION, INC.

("Tandberg") and TELEFONAKTIEBOLAGET LM ERICSSON ("Ericsson") submit this

Further Joint Case Management Conference Statement.

## **INTRODUCTORY COMMENT**

    This action was filed on May 9, 2007.  An initial Case Management Conference was held

on August 17, 2007.  The Court ordered that a Further Case Management Conference be held on

1   January 10, 2008, with a Further Case Management Conference Statement to be filed on

2   January 3, 2008.[1]

3        Plaintiff filed a First Amended Complaint on June 8, 2007.  Defendant Tandberg filed its

4   Answer on June 29, 2007, and filed its First Amended Answer to Complaint on August 24, 2007.

5   Defendant Ericsson filed its Answer on August 9, 2007.

6   **1.  Jurisdiction and Venue**

7        This is an employment case.  The Court has jurisdiction over this matter pursuant to 28

8   U.S.C. Section 1332(a)(1), based on diversity.  Plaintiff is a resident of California and was

9   employed in the Northern District, i.e,, Sunnyvale.  His employer, Defendant Tandberg is a

10  Delaware corporation headquartered in Georgia.  Defendant Ericsson is a Swedish corporation

11  headquartered in Sweden.

12  **2.  Facts**

13       Plaintiff Olson served as the President and CEO of  SKYSTREAM CORPORATION

14  ("SkyStream") between July 1997 and March 2006.  Olson had an employment agreement with

15  SkyStream which provided for certain benefits upon a termination "without cause".

16       In March 2006, Defendant Tandberg acquired SkyStream.  In connection with the merger

17  transaction, Tandberg assumed certain specific contractual obligations and liabilities of

18  SkyStream.  Upon the merger, Plaintiff became a Tandberg employee with the title of Executive

19  Vice President, Compression Systems.  In his position as Executive Vice President, Plaintiff

20  reported to ERIC COONEY ("Cooney"), CEO of the parent company of TANDBERG

21  (TANDBERG Television ASA).

22       At the time of the merger between Tandberg and SkyStream, Tandberg had a stock

23  ─────────────────────────

24       [1] Defendant Ericsson did not participate in the original August 17, 2007 Case
    Management Conference, as it had not yet appeared in the case.  Service of the Complaint on
25  Ericsson took longer than normal, as Ericsson is a Swedish corporation with no agent for service
    registered in California.  Therefore, Plaintiff has had to undertake serving the First Amended
26  Complaint on Ericsson in Sweden, a process which involved following certain international treaty
27  guidelines.

28

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

1    incentive plan, entitled the TANDBERG TELEVISION ASA 2005 Stock Incentive Plan –

2    Restricted Stock Unit Agreement ("RSU Agreement"), pursuant to which Tandberg granted

3    shares of restricted stock units ("RSUs") to certain employees.  In March 2006, Tandberg granted

4    Plaintiff 82,027 Tandberg RSUs under the RSU Agreement.  One third of these shares (27,342

5    shares) became unrestricted on January 31, 2007; one third of the shares were to become

6    unrestricted on January 31, 2008; and one third of the shares were to become unrestricted on

7    January 31, 2009.  Pursuant to the terms of the RSU Agreement, if there was a change of control

8    at Tandberg (such as an acquisition of Tandberg by another company), all of Plaintiff's restricted

9    shares immediately accelerated and became unrestricted, provided that Plaintiff was still

10   providing services to Tandberg at the time of the change of control.

11          Between December 2006 and March 2007, Tandberg was involved in publicly known

12   negotiations and due diligence review with different companies that were interested in acquiring

13   Tandberg.  In late February 2007, Defendant Ericsson announced its intention to acquire

14   Tandberg.  On March 21, 2007, Ericsson publicly announced its pending acquisition of Tandberg;

15   Tandberg and Ericsson hoped that the acquisition would formally close in approximately one

16   month, i.e., during the last week of April 2007.

17          Pursuant to RSU Agreement that governed Plaintiff's RSUs, upon the closing of the

18   acquisition of Tandberg by LME Ericsson, the restricted shares of Plaintiff's stock would

19   immediately accelerate and become unrestricted, provided that Plaintiff was still employed by

20   Tandberg at the time of any actual change in control.  The restricted portion of Plaintiff's

21   remaining RSUs was worth approximately $900,000.  On March 21 and 22, 2007, Cooney

22   informed Plaintiff of his intention to terminate him.  On March 22, 2007, Tandberg terminated

23   Plaintiff, effective immediately.

24          Plaintiff believes that the Tandberg/LME Ericsson merger closed in late April 2007.

25   Plaintiff believed that the timing of his termination was done for the specific purpose of

26   preventing Plaintiff from "vesting" in his restricted RSUs under the terms of the RSU Agreement.

27          Following Plaintiff's termination, Plaintiff and Tandberg also disputed whether certain

28   severance payments were actually owed to Plaintiff, including a six month severance payment; a

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

1   bonus for 2006; and a pro-rated bonus for 2007.

2       The principal factual issues in dispute are:

3     1)  What were the terms of Plaintiff's employment agreement, if any, with SkyStream?

4     2)  At the time Tandberg acquired SkyStream, did Tandberg assume any obligations with

5        respect to Plaintiff under Plaintiff's SkyStream employment agreement, if any?

6     3)  What were Tandberg's reasons for terminating Plaintiff's employment?

7     4)  Did Tandberg terminate Plaintiff prior to the completion of the Tandberg/LME

8        Ericsson merger for the purpose of depriving Plaintiff of accelerated vesting in his

9        RSUs?

10    5)  What were Tandberg's reasons for terminating Plaintiff's employment when it did

11       (i.e., on or about March 21, 2007)?

12    6)  What, if anything, did Tandberg and Ericsson discuss regarding Plaintiff's

13       employment with Tandberg, including the termination thereof and the timing of the

14       termination?

15    7)  Was Plaintiff, in March 2007, contractually entitled to receive an annual bonus

16       payment from Tandberg for his performance in 2006?

17    8)  Was Plaintiff contractually entitled to receive a pro-rated bonus payment from

18       Tandberg for his performance in 2007?

19    9)  At the time of Plaintiff's termination, did Tandberg immediately pay Plaintiff all wage

20       compensation he was due and owed?

21    10)  At the time of Plaintiff's termination, did Tandberg reasonably believe that it had

22       immediately paid Plaintiff all wage compensation he was due and owed?

23    11)  Following Plaintiff's termination, did Tandberg inform Plaintiff that it would not give

24       him any severance pay unless he first signed a release?

25    12)  Following Plaintiff's termination, did Tandberg reasonably believe that Plaintiff was

26       not entitled to any severance pay or other severance benefits unless Plaintiff first

27       signed a release?

28    13)  Did LME Ericsson encourage Tandberg to terminate Plaintiff's employment with

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Tandberg?

2  14) If LME Ericsson did encourage Tandberg to terminate Plaintiff's employment with

3  Tandberg, why did it do so?

4  15) Was LME Ericsson actually aware of the existence, if any, of a contract between

5  Plaintiff and Tandberg?

6  16) If LME Ericsson was actually aware of the existence, if any, of a contract between

7  Plaintiff and Tandberg, what was LME Ericsson's understanding of the nature and/or

8  terms of that contract?

9  **3. Legal Issues**

10  1) Was there any contract between Tandberg and Plaintiff?

11  2) If there was a contract between Tandberg and Plaintiff, what were the terms of any

12  such contract?

13  3) If there was a contract between Tandberg and Plaintiff, was Tandberg's performance

14  excused for any reason?

15  4) Did Tandberg breach the implied covenant of good faith and fair dealing when it

16  terminated Plaintiff's employment with Tandberg in March 2007?

17  5) Did Tandberg breach any contractual obligations to Plaintiff when it decided not to

18  award him any annual bonus compensation for 2006?

19  6) Did Tandberg breach any contractual obligations to Plaintiff when it decided not to

20  award him any pro-rated bonus compensation for 2007?

21  7) Did Tandberg otherwise breach any contractual obligations to Plaintiff?

22  8) Did Tandberg violate California Labor Code Section 206.5 when it asked Plaintiff to

23  sign a release before agreeing to pay him a severance?

24  9) Did Tandberg have a reasonable belief that Plaintiff was not entitled to any severance

25  benefits unless he signed a release?

26  9) Did Tandberg violate California Labor Code Section 201, and so incur "waiting time"

27  penalties under Labor Code Section 203, in connection with its termination of

28  Plaintiff? If so, what is the amount of the "waiting time" penalty owed?

5

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    10) Did Tandberg violate California Labor Code Section 216 in connection with its

2        termination of Plaintiff?

3    11) Did LME Ericsson tortiously interfere with the contract, if any, between Plaintiff and

4        Tandberg?

5    12) Did LME Ericsson tortiously interfere with any other alleged contract between

6        Plaintiff and Tandberg?

7    13) Is Plaintiff entitled to punitive damages on his tort claim?

8    **4.  Motions**

9    Plaintiff does not presently anticipate bringing any motions.

10    Tandberg and/or Ericsson anticipate filing a motion for summary judgment, or in the

11    alternative, summary adjudication of the issues.

12    **5.  Amendment of Pleadings**

13    Plaintiff previously filed a First Amended Complaint to substitute the correct name for

14    Defendant Ericsson.  Plaintiff does not presently anticipate any additional amendments of

15    pleadings.

16    Tandberg and Ericsson do not presently anticipate filing any further amendments of

17    pleadings.

18    **6.  Evidence Preservation**

19    Plaintiff (who is an individual) has been instructed to preserve all relevant evidence.

20    Tandberg and Ericsson have been instructed, and have in turn instructed applicable

21    Tandberg and Ericsson employees to preserve all discoverable evidence, regardless of form.

22    **7.  Disclosures**

23    The parties completed the exchange of their Initial Disclosures in September 2007.

24    **8.  Discovery**

25    Plaintiff has served Defendants with one set of special interrogatories and two sets of

26    requests for production of documents.  Defendants have served Plaintiff with one request for

27    production of documents.  The parties have filed answers and written responses to this discovery.

28    Defendants have been producing documents to Plaintiff in an ongoing manner.   Defendants

6

1  produced some documents to Plaintiff in October 2007, produced another set in November 2007,

2  and produced an additional set of documents on December 20, 2007.  Plaintiff's counsel has met

3  and conferred with Defendants' counsel concerning Defendants' document production and

4  interrogatory answers.  Plaintiff may need to file a motion to compel further documents.

5      Defendants took the deposition of Plaintiff in October 2007.  Plaintiff is scheduled to take

6  the deposition of Defendant's key witness, Eric Cooney, in February 2008.  Plaintiff may need to

7  take several additional depositions, including at least one in Sweden.

8      The parties do not anticipate exceeding the normal limits and rules on permissible

9  discovery.

10  **9.  Class Action**

11      N/A

12  **10.  Related Cases**

13      N/A

14  **11.  Damages**

15      Tandberg maintains that its actions were undertaken in good faith, based upon legitimate

16  and lawful business reasons.  Accordingly, Tandberg further maintains that there are no damages

17  for which it can be held liable with respect to Plaintiff.

18      Plaintiff estimates that the value of the RSUs which he was deprived of due to his "early"

19  termination to be approximately $900,000.  Plaintiff estimates that he should have received a

20  2006 annual bonus of approximately $50,000, i.e., 20% of Plaintiff's base salary.  Plaintiff has

21  not yet been able to estimate the appropriate amount for a pro-rated 2007 bonus.  Plaintiff

22  estimates that the "waiting time" penalty for Defendant's violation of Labor Code Section 201

23  (for failure to immediately pay all compensation due at the time of termination) is approximately

24  $34,840 (based on annual compensation of $301,950, resulting in a daily wage rate of $1,161,

25  multiplied by a 30 day penalty).   Punitive damages will be left to the discretion of the jury.

26  **12.  Settlement and ADR**

27      Plaintiff and Defendant had settlement discussions before this lawsuit was filed.  Plaintiff

28  and Defendants have scheduled a private mediation session with Mark Rudy for March 25, 2008.

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

1   The parties had originally scheduled the mediation with Mr. Rudy for January 7, 2008, but then

2   decided to re-schedule the mediation for March 2008 in order to complete certain discovery

3   which the parties believed would be helpful for the mediation process.

4   **13.  Magistrate Judge**

5   This case was originally assigned to Magistrate Judge Laporte.  Due to a Declination to

6   Proceed Before a Magistrate Judge, this matter was reassigned.

7   **14.  Other References**

8   The parties do not believe the case is suitable for other reference.

9   **15.  Narrowing of Issues**

10   The parties are not aware of any methods which would be useful to narrow the issues in

11   the case at this point.

12   **16.  Expedited Schedule**

13   The parties do not believe at this point that this is a case which can be handled using

14   "streamlined" procedures.

15   **17.  Scheduling**

16   Plaintiff seeks a trial date in late June 2008, with all other pre-trial dates to be set in

17   accordance with the normal rules and procedures.  However, Tandberg prefers a trial date in

18   August 2008, with all other pre-trial dates to be set in accordance with the normal rules and

19   procedures.

20   **18.  Trial**

21   Plaintiff requests a jury trial.  The parties anticipate a trial of approximately 5-8 days.

22   **19.  Disclosure of Non-Party Interested Entities or Persons**

23   Plaintiff and Defendants have filed Certifications as required by Local Rule 3-16.

24   **20.  Other Matters**

25   None.

26

27

28

CURIALE DELLAVERSON HIRSCHFELD & KRAEMER, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

Dated: _12/21/07_

CURIALE DELLAVERSON HIRSCHFELD
& KRAEMER, LLP

By _____
        Stephen J. Hirschfeld
        Geoffrey M. Hash

Attorneys for Defendants
TANDBERG TELEVISION, INC. and
TELEFONAKTIEBOLAGET LM
ERICSSON

Dated: _12/21/07_

MCGUINN, HILLSMAN & PALEFSKY

By:_____
            Keith Ehrman

Attorneys for Plaintiff
JAMES OLSON

JOINT CMC STATEMENT
CASE NO.: C07-02480 PJH